EDWARD ROSEWATER V. STATE OF NEBRASKA.

FILED MARCH 18, 1896.   No. 6898.

1. **Contempt:** PUBLICATIONS.   To constitute any publication contemptuous it must reflect upon the conduct of the court in reference to a cause or proceeding then pending in court and undetermined, and be of a character tending to influence its decision, or obstruct, interrupt, or embarrass the due administration of justice. *Percival v. State,* 45 Neb., 741, followed.

2. ———: ———. Where a newspaper article is not *per se* contemptuous, or where it is susceptible of more than one reasonable construction, one of which is innocent and requires an innuendo to apply its meaning to the court, and the record fails to disclose that the language was employed in its culpable sense, the publisher is not liable for contempt. (*Hawes v. State,* 46 Neb., 149.)

ERROR to the district court for Douglas county. Tried below before SCOTT, J.

*Edward W. Simeral,* for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state:

The editor-in-chief of a newspaper is liable as

for contempt for articles which appear in the columns of his paper, though it is affirmatively shown that he had no knowledge of the articles until after publication. (*People v. Wilson*, 64 Ill., 195; *State v. Frew*, 24 W. Va., 416; *Commonwealth v. Morgan*, 107 Mass., 199; *People v. Stapleton*, 33 Pac. Rep. [Colo.], 167; *Rex v. Gutch*, M. & M. [Eng.], 433; *Commonwealth v. Nichols*, 10 Met. [Mass.], 259; *Smith v. Utley*, 65 N. W. Rep. [Wis.], 744.)

NORVAL, J.

Edward Rosewater was adjudged, by the district court of Douglas county, guilty of having committed a contempt of that court, and sentenced to pay a fine of $500 and to imprisonment in the county jail for the period of thirty days. The defendant is charged with the publication in the Omaha *Bee* of the following portion of an article which appeared therein, to-wit:

"JUSTICE WITHOUT EQUALITY.
Sentences Adjusted to Fit the Men.
One Party to a Crime Gets a Five-year Sentence
in the Penitentiary, While Another
Gets the Benefit of a Pull.

"Persons who were around the criminal section of the district court yesterday afternoon witnessed a striking illustration of what it is to be possessed of a pull. These same persons were also given an illustration of how easy it is for a man to keep out of the penitentiary if the pull is worked for all it is worth."

The charge is founded upon the same fragment, or portion, of the newspaper article upon which the contempt proceedings were based in the case of *Percival v. State*, 45 Neb., 741. The only sub-

stantial difference between the information or affidavits filed by the county attorney in the two cases, is that in the reported case it was averred that Percival wrote and caused to be published the article in question, while in the one at bar it is alleged that Mr. Rosewater, as editor, proprietor, and manager of the Omaha *Bee*, "published and caused to be published and permitted to be published" the aforesaid article in the evening addition of said newspaper. The record discloses that no part of the article of which complaint is made was written by Mr. Rosewater; that he had no knowledge of its existence until after it was published; and that he did not directly or indirectly order or cause it to be inserted. It is also established that the Omaha *Bee* is published by the Bee Publishing Company, a corporation; that the defendant is, and was, one of the stockholders therein and the editor-in-chief of said newspaper, and as such had the general management and control of the policy of the paper and the different editions thereof, at the time the alleged contemptuous article was published.

The attorney general contends that the editor-in-chief of a newspaper is liable in a proceeding like this for contemptuous articles which appear in the columns of his paper, even though he had no knowledge of such articles until after their publication. The brief of the state contains an able argument in support of this proposition, fortified by decisions from courts of recognized ability and standing. We do not feel called upon now to enter upon a discussion of the question, or to decide it, although the point may be fairly raised by the record. We adopt this course, inasmuch as the defendant in his answer to the rule

to show cause why he should not be attached for contempt has expressly disclaimed any desire to evade responsibility for the publication in question by reason of the fact that he is the editor-in-chief of the different editions of the *Bee*, and because in his brief filed in this court he has cited no authorities in opposition to the principle contended for by the attorney general. Furthermore, conceding, for present purposes, the doctrine invoked by the state to be sound, yet the cause must be reversed for the reasons hereafter stated.

As already indicated, this conviction is based upon the same publication that was alleged to constitute a contempt in the Percival case. It was there shown that Percival did not write or cause to be published the caption or head-lines of the article; but that he did write the following: "Persons who were around the criminal section of the district court yesterday afternoon witnessed a striking illustration of what it is to be possessed of a pull. These same persons were also given an illustration of how easy it is for a man to keep out of the penitentiary if the pull is worked for all it is worth." The conviction in that case was reversed, the court holding that the language quoted was not *per se* libelous; that unaided by innuendo it did not apply to the court or reflect upon its integrity, nor tend to corrupt or embarrass the administration of justice; and that the article was susceptible or capable of an innocent interpretation. HARRISON, J., in the opinion filed therein, in commenting upon that portion of the article admitted to have been written by Percival, says: "It cannot be said, upon its face, to refer to any case pending at

the time it was written and published or to any
designated case. In its terms it deals with some
past transaction or proceedings. The phrase
'possessed of a pull' is, to speak strictly, without
an intelligible meaning, and is, in any event, so
doubtful and uncertain that it cannot be applied
as imputing that the court was corrupt as is
claimed in the complaint, with any greater cer-
tainty than it may be said to refer to some other
person or persons, or to actions or motives erro-
neous and improper, but not corrupt. The por-
tion of the article admitted and proved to be the
work of plaintiff in error and the proof made
were insufficient to support a charge and convic-
tion of contempt and sentence therefor." Upon
a reconsideration of the question, aided by the
briefs and arguments of counsel, we are fully
satisfied with the conclusion there reached. That
decision therefore controls this as to that portion
of the publication set out in the information
herein, which is not included in the head-lines
or caption.

It remains to be determined whether the head-
lines, either standing alone or when read in con-
nection with the remainder of the publication
upon which these proceedings are based, in law,
constitute a contempt of court. We again quote
that portion of the article set out in the informa-
tion which we designate as the head-lines: "Jus-
tice Without Equality.—Sentences Adjusted to
Fit the Men.—One Party to a Crime Gets a Five-
Year Sentence in the Penitentiary,While Another
Gets the Benefit of a Pull." It will be observed
that the foregoing, whether considered by itself
or taken in connection with the rest of the article
alleged in the information to be contemptuous, is

not *per se* libelous.   It purports on its face to re-
late to proceedings past and ended, and to have
no reference to any matter or cause at the time
pending in court.   The comments in question,
unaided by innuendoes, cannot be said to be of a
character tending to influence the decision of the
court, or to impede, interrupt, or embarrass it in
the exercise of its proper functions, and as the
proofs fail to show that they were employed in
their culpable sense they do not amount to a con-
tempt of court.   (*Hawes v. State*, 46 Neb., 149.)
"Justice Without Equality" is a meaningless
expression.   No wrong or improper motive is
imputed to the court or judge in the statement
"Sentences Adjusted to Fit the Men."   It is our
understanding that sentences should be so im-
posed.   A person convicted for his first offense,
and who is young in years, ordinarily, ought not
to receive so severe a punishment as an old, hard-
ened criminal convicted of crime of the same
grade.   Some good citizens have expressed the
thought that the courts of the country have not at
all times adjusted their sentences to fit the men
and their crimes.   In other words, some criminals
have been punished too severely, while others
have received sentences so light as to amount to a
travesty upon justice.   The phrase, "the benefit of
a. pull," as was said in the Percival case, has no
intelligible meaning.   At least, in the connection
in which it was used, we cannot say that it neces-
sarily signifies that the court was corrupt, or un-
duly influenced.   The part of the article com-
plained of, in and of itself, casts no reflection upon
the court.   The defendant in his verified answer
to the rule entered against him to show cause
denies that the language of the publication is sus-

ceptible of the interpretation placed thereon by the innuendoes in the information, or that the defendant "did willfully, wrongfully, unlawfully, and contumaciously, and with the intent of bringing the district court of Douglas county which is presided over by Judge Cunningham R. Scott into public contempt, disrepute, or ridicule, or to destroy the influence, honor, and integrity of said court and said Cunningham R. Scott, as the judge thereof, or to have it believed that said court or the said Cunningham R. Scott, as judge thereof, was corrupt or influenced by corrupt motives, or for the purpose of destroying the efficacy of the court in the administration of public justice, or for the purpose of vilifying or traducing the said court or the judge thereof in the due administration of justice in any suit then and there pending." Considering the publication in connection with the above unequivocal denials in the answer of the innuendoes of the information, the conclusion is irresistible that the conviction cannot stand. The defendant insists that the language of the article was not employed in a libelous sense or with intent to cast reflections upon the court or judge. As it is capable of an innocent meaning, such a construction must be given it. The language made the basis of the charge preferred against the defendant is a very small segment of the article of which it formed a part. That portion of the article not set out in the information contains some very strong expressions which may have been a flagrant abuse of the liberty of the press. These proceedings are not, however, predicated thereon, and we do not wish to be understood as in any manner approving such portion of the publication. We are deciding the case alone

Rosewater v. State.

upon the fragment of the article which is set out in the information; and we hold that it is not contemptuous. The constitution guaranties that "every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that liberty." (Constitution, art. 1, sec. 5.) But this constitutional right does not protect any person from punishment for contempt of court for publishing a newspaper article commenting upon a pending cause or proceeding when the publication is calculated to hinder, obstruct, or impede the due administration of justice. The power conferred upon a court to punish for contempt is to enforce respect and obedience to its authority, and is necessary to accomplish the objects and purposes for which it was created. The power is not given to compel sentimental respect. It is not every uncomplimentary comment or criticism upon a judge that he can afford to notice. "While the power to punish when contempts are really committed is one which should be exercised promptly in proper cases, yet it is in some respects an arbitrary power, and hence one which ought to be kept within prudent limits. This is particularly the policy of the law in regard to indirect contempts. (*Haskett v. State,* 51 Ind., 176.) No one ought to be found guilty upon a doubtful charge of indirect contempt, and especially so in a case in any manner involving the freedom of the press. It is true that too often, under the guise of a guarantied freedom, the press transcends the limits of manly criticism and resorts to methods injurious to persons and tribunals justly entitled to the moral support of all law-abiding citizens, but such digressions are not always unmixed evils, and it is only in rare in-

stances that legal proceedings in repression of such a license can with propriety be resorted to." (*Cheadle v. State*, 11 N. E. Rep. [Ind.], 426.) While the power to punish for indirect contempt exists in the court, it should only be exercised when it is manifest that the publication was intended to bring the court into disrepute and to destroy confidence in it, and obstruct or embarrass the administration of justice. The record failing to present such a case, the judgment and sentence are reversed and the cause dismissed.

REVERSED AND DISMISSED.