## EX PARTE L. M. GREEN.

### No. 2707.    Decided June 22, 1904.

**1.—Contempt of Court—Undefined by Statute.**

In this State we have no statute defining contempts of court, and we are accordingly relegated to the doctrine of contempts at common law, as applied to our written Constitution and the spirit and genius of our institutions.

**2.—Same—Case Must Be Pending.**

Publications not relating to a pending case, no matter how defamatory the language used may be with reference to the court or the judge thereof, will not constitute contempt, as it can not be regarded as calculated to interfere with the administration of justice.

**3.—Same—General Defamation Not Contempt.**

Where a newspaper article which criticised and reflected upon the proceedings of the county court, the judge and bar in general terms, was published, but did not refer to any particular case then pending before the judge of said court, the publisher of said article was not guilty of contempt.

From Smith County.

Original application for habeas corpus for release of a commitment for contempt, for publishing in a newspaper an article reflecting on the proceedings in the county court.

The opinion states the case.

*Johnson & Edwards* and *F. J. McCord,* for appellant.—Publications which attack the court, and which amount to an abuse of the freedom of speech, in order to constitute contempt of court must possess the following essential conditions: (a) The publication must not be a mere libel or false accusation of the judge, but must be an unjust or unwarranted attack upon the court; (b) the publication must be in reference to some particular cause or proceeding then pending and which is to be determined in said court. State v. Anderson, 40 Iowa, 207; State v. Dunham, 6 Iowa, 245; Ex parte Barry, 85 Cal., 603; Cheadle v. State, 110 Ind., 301; Storey v. The People, 79 Ill., 45; Ex parte Wright, 65 Ind., 504; Stuart v. People, 3 Scam. (Ill.), 395; State v. Kaiser, 23 Pac. Rep. (Ore.), 964; In re Pryor, 26 Am. Dec., 750; 9 Cyc. of Law and Proc., subject "Contempt;" McClatchy v. Court, 51 Pac. Rep. (Cal.), 696; 27 Pac. Rep. (Mont.), 352; Rosewater v. State, 66 N. W. Rep., 640; State v. Ashbaugh, 38 L. A. R., 554; In

re Hughes, 43 Pac. Rep. (New Mexico), 692; State v. Edwards, 89 N. W. Rep., 1011; State v. Tugwell, 52 Pac. Rep., 1056; People v. Stapleton, 33 Pac. Rep., 167; In re MacKnight, 27 Pac. Rep., 336. Contra: State v. Morrell, 16 Ark., 385. Also Ex parte Ireland, 38 Texas, 349; 7 Am. and Eng. Enc. of Law, 2 ed., 28.

Contempt proceedings can not be made the means of enforcing sentimental respect for the court or judge, nor to prevent the judge from falling into disfavor or disrepute; this must be secured, if at all, by other means.

The fact that the publication may offend, nettle or embarrass the judge or result in the loss of respect or confidence in him or in his court will not make such publication the subject of contempt; but to constitute such publications constructive contempt, even, they must amount to and have the effect to interfere with and prevent the court from deciding or determining some cause or proceeding then pending without prejudice or intimidation, and must amount to an obstruction of such proceedings. In re MacKnight, 27 Pac. Rep., 336.

*Howard Martin,* Assistant Attorney-General; *W. A. Hanson,* and *Sawnie Robertson,* for the State.—On the proposition that the court can not punish for contempt acts not in the presence of the court, unless they relate to a pending cause: State v. Morrill, 16 Ark., 385; State v. Shepard, 76 S. W. Rep., 79; Ex parte McLeod, 120 Fed. Rep., 130; Commonwealth v. Dandridge, 2 Va. Cases, 408.

HENDERSON, JUDGE.—This is an original habeas corpus proceeding, sued out before this court. During the January term, 1904, of the County Court of Smith County, L. M. Green, one of the editors of the Tyler Courier, a newspaper, published and circulated in Tyler, Smith County, and vicinity, in the issue of said paper on January 21st, wrote and published the following editorial, to wit:

"Why Is It Thus?—The people of Smith County are having the wool pulled over their eyes and a great many of these poor creatures don't know it. But if they were tied hand and foot and compelled to sit in the courthouse and forced to witness the proceedings in the trial of criminal cases for one week in the county court they would come out of that building in full agreement with the Courier, which asserts that the county criminal court proceedings are not far removed from a public disgrace. Witnesses are denounced and accused of all sorts of crimes while in the witness box, and jurors are offended, ridiculed and forced into argument and to answer questions put with the sole purpose of aggravating and provoking them to say something that will disqualify the juror in that case.

"The editor sat in the courthouse recently and heard a lawyer tell the judge that 'I know I can not get a fair trial for my client in this

court,' and the judge sat like a schoolboy would when being lectured by the teacher.

"The taxpayers of the county are paying dearly for this public disgrace. They foot the bills and pay the penalty for tolerating these proceedings, that are making mockery of court trials. For several years the Courier has been indirectly and directly trying to arouse the people in their own interest and for their own benefit, but it has made poor headway. What is needed is jurors and witnesses with nerve enough to sit in the jury box and witness chair with a gun, and then pull down on the first lawyer that offers them an insult. Where the court will offer no protection the individual should protect himself from insult. He wouldn't have to kill any lawyer. A lawyer can scent danger as far as anyone.

"The people of Smith County owe it to themselves to get together in their own neighborhoods and discuss this disgrace and what is best to be done with it. If any of the farmers are so ignorant as not to know what is going on in the courthouse, let them talk with the witnesses and jurors who have been in the present county court now in session, and then they will know how to proceed. They will have the information, not from the Courier, but from other sources as well, and in order to help along the Courier here publishes the names of the jurors for this week but they are not onto the jugglery on the outside, but Rev. M. O. Meador and other good citizens are onto it. Here are the names of the jurors: J. S. Hill, E. R. Gibson, W. T. Smith, R. M. Johnson, J. D. Curry, E. P. Barbee, S. J. Morris, E. L. Stuart, W. J. Howard, C. C. Cross, T. F. Morris and F. S. Zackery."

Relator was summoned to appear before said county court on January 23d, to show cause why he should not be held in contempt for the publication of said writing. He came before said court and answered, among other things: (1) That the court was without jurisdiction to adjudge him guilty of contempt. (2) That the matters and things set forth in said article did not constitute contempt. (3) That said publication was not in reference to any cause, suit or proceeding then pending, or at any time pending in said court, and was not a criticism upon any decision, order or ruling of said court, in any suit or proceeding then or ever pending in said court; and in no manner interfered with, obstructed or impeded the trial or disposition of any suit, cause or proceeding in said court; nor did said article obstruct or impede the due administration of the law in said court. Nor does it interfere with or prevent the judge of said court, the parties, witnesses, jurors, attorneys or officers of said court from the discharge of their duties. (4) And further that the writing and publication of said article could not be punished, as it is protected by that clause of the State Constitution which guarantees the liberty of speech and of the press, etc. The answer further proceeds to set out at length that said article was not

intended in any manner to reflect upon the honesty of the judge of said court, nor does it charge that the law was not fairly administered in said court; that said article was written and published without malice and in good faith, relator believing that the same was proper matter for publication, and was designed and intended to call attention to a practice believed to be the subject of criticism, and calculated to interfere with and prevent the due and orderly administration of justice in and by said court; that the evil complained of and criticised was the treatment of witnesses and jurors by certain attorneys in said court, and any conduct on their part lacking in proper regard for the dignity of said court and its proceedings. That the publication was written while its author was smarting under indignation on acount of proceedings which he had witnessed in said court, wherein the witnesses had been unnecessarily and improperly denounced and abused, jurors asked many impertinent, provoking and unnecessary questions; and in which one of the lawyers had stated to the court, and to the judge, "that he could not hope to get a fair and impartial trial in said court." That relator was indignant at the lack of respect shown for said court and its proceedings which said conduct manifested; and the sole purpose and object of said publication was to express relator's disapproval of such unseemly proceedings, and to bring about a greater respect for the court. That its publication was not intended as a contempt of said court, nor to interfere with the due administration of the law in said court, but to arouse public opinion and to prevent the unjust abuse of witnesses and conduct lacking in proper respect for the court. Relator further disclaimed any intention to provoke jurors or witneses to any acts of violence in said court, but was intended merely to forcibly express the idea that jurors and witnesses are entitled to protection from any unnecessary or unjust abuse. Relator disclaimed any intention to countenance or encourage disrespect to the court or incite violence by the suggestion that the witnesses and jurors should go armed into said court; that his purpose was merely to call attention to the matter of the treatment of jurors and witnesses in said court, and that he was moved solely by the desire and purpose of aiding said court in the maintenance of order and decorum and in administering the law.

The court heard the matter on the pleadings, being the motion and answer, and adjudged said L. M. Green in contempt of the court, assessing against him a fine of $100. The attorneys for relator asked the court for a ruling on his right to introduce testimony as to the truth of facts stated in said answer. The court ruled no testimony was necessary and declined to hear any testimony, for the reason that said answer constituted no defense to the charge of contempt against him; and for the further reason that the court was present in the courtroom, and heard and knew all things that occurred and referred to in said article, and knew as a fact that said article, published by said Green, in so far as the action of the court was concerned, was untrue.

On the hearing of this application before us at the Dallas term, testimony was adduced pro and con in regard to said contempt proceedings, and the right of said county judge to adjudge relator guilty of contempt. This is a sufficient statement in order to present the legal questions involved.

We understand relator to contend, that the matter about which he was fined was not written with reference to any pending case in said court, and consequently could not and can not be treated as contemptuous of the court. Furthermore, the same was legitimate criticism of the court and its proceedings and is privileged, being protected under our State Constitution, which guarantees the liberty of speech and of the press. On the other hand, the State insists that the subject matter of said article is not legitimate criticism, but is defamatory and denunciatory of the court, and is the subject of contempt; that although said article may not relate to or refer to any case pending before said court, it was defamatory and calculated to scandalize the court itself, and bring it into public disgrace, and so serve to delay, obstruct and embarrass the court in the conduct and trial of all causes, and thus disparage its usefulness as an instrumentality of government.

It may be conceded that the article by it terms did not refer to any particular case then pending before the county judge, or if it did, it is not disclosed what particular case the writer had in view. We are accordingly confronted with the proposition, can the publisher of a newspaper be held guilty of contempt, by using expressions defamatory of a court and its proceedings, which do not relate to any pending cause? Relator has referred us to a number of cases, which he insists are decisive of the question that the court can not treat as a matter of contempt any criticism, no matter how untrue or defamatory of the court, which is not uttered with reference to some particular case then pending in the court. We have examined these, and the majority of them would appear to bear out his contention. State v. Anderson, 40 Iowa, 207; Stuart v. People (Ill.), 3 Scam., 395; Story v. People, 79 Ill., 45; Ex parte Hickey (Miss.), 4 Smed. & Mar., 751; Ex parte Wright, 65 Ind., 504; Cheadle v. State, 110 Ind., 301; Ex parte Barry, 85 Cal., 603; Rosewater v. State, 66 N. W. Rep., 640; State v. Edwards (N. D.), 89 N. W. Rep., 1011; State v. Kaiser (Ore.), 25 Pac. Rep., 964; State v. Tugwell (Wash.), 66 Pac. Rep., 1056; People v. Stapleton (Colo.), 33 Pac. Rep., 167. McClatchy v. Superior Court (Cal.), 51 Pac. Rep., 696.

In some of the above enumerated cases there was no question as to the pendency of the case about which the publication was made; consequently the question was not directly involved. Some of them, however, did involve the question. There are cases, however, which maintain the contrary view. Commonwealth v. Dandridge, 2 Va. Cases, 409; Ex parte Moore, 63 N. C., 397; Ex parte McLeod, 120 Fed. Rep., 130;

·State v. Morrill, 16 Ark., 384; State v. Shepard (Mo.), 76 S. W. Rep., 79; In re Shadwick (Mich.), 67 N. W. Rep., 1071. While all of these cases discuss the question elaborately and announce the doctrine that the publication can be contemptuous, although not in regard to a case then pending before the court, still in but two of them was the question directly involved, to wit, Ex parte Moore and Ex parte McCloud.

So it may be said that a great majority of the American cases require that the publication be with regard to some pending case, before it can be treated as contemptuous.

In this State we have no statute defining contempts of court, and we are accordingly relegated to the doctrine of contempts at common law as applied to our written Constitution and the spirit and genius of our institutions. As stated above, we gather from the current of authorities, both those cited and others, that there can be no constructive contempts of court with reference to publications reflecting on the court or the judge thereof, unless the publication is not only of a defamatory character but is untrue, and in addition thereto relates to some particular case then pending, and is calculated to embarrass the court in the trial or disposition thereof. As to other publications not relating to a pending case, no matter how defamatory the language used may be with reference to the court or the judge thereof, this will not constitute a contempt, because it can not be regarded as calculated to interfere with the administrtaion of justice. If it is true, as has been said, that the principle on which all constructive contempts are allowed is the tendency to degrade the courts, and so impair their usefulness as agencies of government, then it must be conceded that it is difficult to distinguish the evil consequences likely to ensue from denunciatory publications regarding the conduct of courts in cases no longer pending and such publications concerning cases that are pending. To the ordinary understanding the baneful results likely to follow are equally as great in one case as in the other. However, the rule announced in the great majority of cases, and it may be considered the American doctrine, is, that no matter how defamatory of the court or judge a publication may be, it can not be regarded as a contempt of court unless it be written and published with reference to a case then pending before the court. We accordingly hold, inasmuch as the matter about which relator was adjudged guilty of contempt of court did not relate to a case then pending before the court, it can not be treated as a contempt. The relator is accordingly ordered discharged.

*Relator discharged.*