## LIBEL OF A JUDGE TOUCHING PROCEEDINGS WHICH HAVE BEEN TERMINATED.

Court of Appeals for Hamilton County.

JOHN M. DUGAN V. STATE OF OHIO ET AL.

Decided, November 22, 1915.

*Contempt—Punishment for, Can Not be Based on Defamatory Comments Regarding the Court, When Libel Does Not Constitute Contempt.*

A libelous attack upon a judge can not be made the basis of a charge of contempt, unless it has a tendency to impede or hinder the court in the administration of justice by having reference to the action or conduct of the judge in a pending case or proceeding.

*Charles L. Swain* and *Pogue, Hoffheimer & Pogue,* for plaintiff in error.

*Hosea & Knight,* contra.

BY THE COURT (Edward H. Jones, Frank M. Gorman and Oliver B. Jones, JJ.).

This is a proceeding in error to the judgment of the Superior Court of Cincinnati imposing a sentence of fine and imprisonment upon the plaintiff in error, John M. Dugan, under a charge of contempt.

The facts briefly stated are as follows:

On October 31, 1914, the Juvenile Protective Association, by its president, Frank H. Nelson, brought an action for injunction and damages in the Superior Court of Cincinnati against Millard F. Roebling, who at that time was a candidate for the office of judge of the court of domestic relations. The Juvenile Protective Association, whose object is indicated by its name and whose purposes were closely allied with the duties and functions of the court of domestic relations, had endorsed for judge of that court the opponent of Mr. Roebling, and had issued a circular for public distribution which while not mentioning the name of

the candidate so endorsed by said association, called upon the electors to carefully consider the qualifications and fitness of the respective candidates and cast their ballots for the man best qualified for the position. A very short time after the appearance of said circular or pamphlet, another pamphlet was circulated purporting to be issued by the Juvenile Protective Association, the greater part of which adopted the language of the original circular. This latter circular concluded with the endorsement of Millard F. Roebling for the position of judge of the court of domestic relations.

The petition of the Juvenile Protective Association in the case against Roebling above referred to set forth the above facts and charged that said circular representing the Juvenile Protective Association as endorsing Mr. Roebling for judge was a misrepresentation and a fraud wholly unauthorized by said association and intended to place said association in a false and unenviable attitude, etc. That case was partially heard before one of the judges of the superior court on the day before the election, when it was shown that the spurious or bogus circular was printed at the printing establishment conducted by Mr. Henry S. Rosenthal. And it therefore became important in the conduct of the case and in order to render a correct judgment therein to ascertain who authorized the printing and distribution of said bogus circular. To this end during the progress of the case Mr. Henry Rosenthal was called as a witness.

It is only necessary, in order to understand the nature of the case under consideration, to further state that on account of alleged evasive and false answers given by Mr. Rosenthal at said time, and after a lengthy and fruitless examination, the judge presiding found that the witness Rosenthal was concealing the truth and in effect refusing to testify; that his conduct in the presence of the court was an obstruction to the administration of justice and, under the authority of Section 12136, General Code, adjudged the witness Rosenthal guilty of contempt of court.

This took place on the 6th day of November, 1914. On the same day Rosenthal instituted a suit in habeas corpus in the Court of Common Pleas of Hamilton County, which was heard and finally determined on the 25th day of November, 1914.

We deem it necessary to give this short history of the Rosenthal matter in order that the charge against Dugan and the ground of this decision may be fully understood, and we now come to the part that Dugan took in the matter which led to the formal charges of contempt filed against him by a committee of the bar appointed for that purpose.

It appears that late in December, Dugan as correspondent for a periodical known as the *Typographical Journal,* which is said to be the official paper of the International Typographical Union of North America, wrote an article to that journal which was printed in its January, 1915, number. This article or contribution of Dugan occupied several columns of the journal and consisted of items of news supposed to be of interest to printers. In one of these items Mr. Dugan entered into a lengthy and somewhat animated defense of Mr. Rosenthal, with reference particularly to the trouble which arose in the Printers' Union No. 3 over the taking away from Rosenthal and his establishment of the union label for the alleged offense of printing the spurious circular above referred to and the use of the label thereon without the number of said label.

It will be borne in mind that at the time of the writing of the article, and a long time before its publication, the contempt proceedings against Rosenthal had ended, and that the habeas corpus proceedings growing out of the adjudication of that case had terminated. It was language used by Dugan at this time which was made the basis of the charge of contempt against him. On page 68 of the *Typographical Journal* Dugan wrote:

"During the discussion of the case at the last meeting of No. 3 it was plainly shown that a member of No. 3, an officer of the allied council, had visited the homes of members working in the Rosenthal office trying to secure evidence from these members to assist in convicting the president of the Rosenthal plant in an action that was then on in Hamilton county courts. When the proprietor of this shop was on trial this member of No. 3 and an officer of the allied council sat on the bench with the judge prompting him and coaching him as to how to proceed against Mr. Rosenthal."

To the charges of contempt Mr. Dugan filed an answer containing three separate defenses:

The first defense was in effect a denial that said article or any part or portion thereof insulted, villified. or intimidated the judge, or had a tendency so to do; he denies that it inflamed or had a tendency to inflame the prejudices of the people, etc.

The second defense was briefly stated in the answer and we quote it in full:

"This defendant adopts and makes part hereof all and singular the allegations stated in the first defense, and says that the proceedings referred to in said publication were, at the time the same was written and published in said journal, wholly concluded and terminated, and that neither said article, nor anything therein contained obstructed or tended to obstruct in any manner the administration of justice in the proceeding in which Henry Rosenthal was tried for contempt."

And in the third defense Dugan states that his only object in writing and publishing said article was to inform the printing craft of the trial of Henry Rosenthal and the charges made against him and the subsequent removing and taking away the union label from the firm of Rosenthal & Company. He further states that in writing and publishing said article he did the same in good faith without any intention, purpose, thought, design or desire to embarrass or obstruct the process of the court in the proceedings against Henry Rosenthal or in the suit of *the Juvenile Protective Association* v. *Roebling,* and now disclaims any intention or thought of disrespect or imputing corrupt or improper motives to said judge or court or any of its officers, or questioning its integrity or interrupting, embarrassing or in any manner obstructing the administration of justice therein.

A review of the evidence adduced in the court below shows that the defendant utterly failed to prove his first and third defenses. It was shown by the evidence in the case that the portion of the article quoted above, in whcih it is stated that someone sat by the judge during the trial and coached him, was absolutely unfounded, and that there was no justification whatever for the publication in anything that Mr. Dugan had seen or heard. He was not present in court while Rosenthal was on the witness stand or when he was adjudged in contempt, or at any

other time during the progress of the case. The only founda-
tion which he claimed for the article was that at a meeting of
No. 3 he had heard someone say that a Mr. Bell had prompted
the judge during the Rosenthal hearing. He could not say who
it was who made the statement in his hearing and did not show
that he had made any effort to ascertain the identity of the per-
son making the statement before writing the false and scurrilous
attack upon the judge.

It seems a travesty, almost, upon judicial procedure for him
to use this language in his first defense:

"He denies that it degraded or had a tendency to degrade
said court in the estimation of the community; he denies that it
inflamed or had a tendency to inflame the prejudices of the peo-
ple against said court."

The truth or falsity of this must be determined by the court
from the language used. We do not see how reasonable minds
could differ as to the obvious purpose and effect of this lan-
guage. That it was false, no one now denies. We believe that
it was not only false, but was deliberately and wilfully false,
without any excuse or justification whatever. The attack was
libelous; it was vile and venomous.

The third defense is equally unsupported by the evidence. It
does not show that. Mr. Dugan made this statement about the
judge in good faith "without any intention or thought or dis-
respect or imputing corrupt or improper motives to said judge
or court or any of its officers, of questioning its integrity or in-
terrupting, embarrassing or in any manner obstructing the
administration of justice therein."

But we think the second defense of the answer is a good de-
fense, and that it is supported by the evidence in the case, which
shows that at the time the article was written and at the time
it was published the proceedings for contempt against Mr.
Rosenthal—which was obviously the case referred to by Mr.
Dugan in his article—was fully terminated.

It seems to be the well settled law in most, if not all, of the
states of this Union that however libelous a written attack upon
a judge may be, it can not be successfully made the basis of a

contempt charge unless it is with reference to the conduct of the judge in a pending case or proceeding and thus has a tendency to impede or hinder the court in the administration of justice.

Without further comment we will cite a few authorities in support of this well recognized rule of law:

In 6 R. C. L., p. 512, the general principle is thus stated:

"Under our laws defamatory comments on the past conduct of the judge or relating to his fairness or honesty, may be libelous, but do not constitute contempt, even though they may well embarrass the court to some extent in pending litigation."

In *Post* v. *State,* 14 C. C., 112, the last paragraph of the syllabus reads as follows:

"Newspaper comments, however libelous, having relation to proceedings which are past and ended, are not in contempt of court, or of the authority of the court to which reference is made."

On page 121, in the opinion of this case, the court referring to the opinion of the Supreme Court of Ohio in the case of *Myers* v. *Ohio,* 46 O. S., 473, say:

"It is apparent to us that this language of the court was intended to, and the court does hold that the libels upon the court which do not relate to cases pending, are not a contempt, and concur with the adjudications in those states which so hold."

In *Rosewater* v. *State,* 47 Neb., 630, the court says:

"To constitute any publication contemptuous it must reflect upon the conduct of the court in reference to a cause or proceeding then pending in court and undetermined and be of a character tending to influence its decision or obstruct, interrupt or embarrass the due administration of justice."

Clark, J., in the concurring opinion in the case of *State* v. *Cox and Burba,* 11 N.P.(N.S.), 265, tersely expresses the same principle thus:

"The authority, this extraordinary power residing in the court being founded on necessity, it must find its limit when the

necessity ceases, and this necessity as has been set forth extends only to the preservation of its freedom of action in the business it has in hand.''

We again quote from the opinion by Hale, J., in the case of *Post* v. *State of Ohio, supra,* from the concluding paragraph on page 123:

''The tendency of the article was not to embarrass the court in the disposition of the case then pending before the court. * * * In both the general discussion and in the specific instance referred to, the reference was to a past transaction, to matters done and ended. It will not be claimed that the publication of this article had, or could have had, the slightest influence on the judge named therein, in the disposition of a case then pending, or in any way embarrass him in the disposition of any case thereafter to be tried. It did not, therefore, within the meaning of the statute, in the judgment of this court, obstruct the administration of justice. It was an unjust criticism of a faithful and upright judge, but not a contempt of court.''

Every word of this quotation is peciliarly applicable to this case. The false and unjust criticism by Mr. Dugan had no reference, as we view the evidence, to any case pending before the judge who was the object of Dugan's mean attack. Although libelous in the extreme, it was not contempt.

The judgment will therefore be reversed.