EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALFONSO LASTRA CHARRIEZ, acusado y apelante.

Núm. 5916.—*Sometido:* Marzo 20, 1936. *Resuelto:* Junio 2, 1936.

M. *Benítez Flores* y *L. Tormes García,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un procedimiento de desacato iniciado a virtud de una orden del Juez del Distrito de Humacao dictada en septiembre 19, 1934. Citado el querellado, formuló excepciones perentorias sobre las cuales oyó la corte a sus letrados y al fiscal el 26 de septiembre, reservándose su resolución que dictó el 30 de octubre siguiente declarándolas sin lugar. Señalado el 3 de diciembre de 1934 para la vista, comparecieron El Pueblo por su fiscal y el querellado por su abogado. Éste manifestó que sometía el caso por la evidencia presentada en el de desacato seguido contra Rosa Ramos, haciendo constar "que lo que dijera el querellado Alfonso Lastra Charriez fué dicho bajo el calor de la argumentación en el momento en que defendía a Rosa Ramos." Sometió también el asunto el fiscal, y la corte lo resolvió el 13 de diciembre siguiente, como sigue:

"Sometido el caso a que alude el epígrafe por la misma argumentación y evidencia desfilada en el caso que contra Rosa Ramos y otros, por un procedimiento de igual naturaleza que el presente, se les siguió a dichos querellados, la Corte examinadas dichas argumentación y evidencia, llega a la conclusión que debe declarar y declara, al Lcdo. Alfonso Lastra Charriez, incurso en desacato a este Tribunal, en armonía con la ley para tal caso prevista y hecha; señalando el día 20 de diciembre de 1934, a las nueve de la mañana para el pronunciamiento de la sentencia. Notifíquese."

La sentencia pronunciada, en lo pertinente, dice:

"Hoy día 20 de diciembre de 1934, comparece el querellado por su propio derecho y no habiendo aducido razón alguna para demostrar que no procede dictar sentencia en su contra, la Corte le condena a la pena de treinta dólares de multa o en su defecto un día de cárcel por cada dólar que dejare de satisfacer, sin costas."

No conforme el querellado apeló para ante este tribunal, quedando archivada la exposición del caso en octubre 15, 1935. Dicha exposición no contiene la evidencia que sirvió de base a la sentencia recurrida. Concedidas cinco prórrogas para ello, quedó el alegato del apelante archivado en febrero 17, 1936. Archivó el suyo el fiscal en marzo 16 siguiente, celebrándose la vista del recurso cuatro días después.

Señala el apelante ocho errores cometidos a su juicio por la corte sentenciadora 1, al resolver que tenía jurisdicción; 2, al decidir que los hechos relacionados en su orden constituían desacato; 3, al ignorar el artículo 2 de nuestra Carta Orgánica; 4 y 5, al desconocer la inmunidad del querellado; 6, al no tomar en consideración la evidencia; 7, al declararlo convicto de desacato, y 8, al decidir que el escrito de Rosa Ramos constituye una crítica injuriosa e infamante de los procedimientos de la corte. Argumenta separadamente los señalamientos primero y segundo, conjuntamente el tercero, cuarto y quinto, conjuntamente el sexto y el séptimo y separadamente el octavo.

La orden de la corte iniciando el procedimiento dice:

"POR CUANTO, el día 5 de septiembre en curso, mediante petición expresa del Sr. Fiscal de esta Corte, decretó la misma el archivo y sobreseimiento del caso que el Pueblo de Puerto Rico seguía contra Félix García, (a) Falo, de atentado a la vida, cometido según la acusación, en la persona de Rosa Ramos, allá para el mes de septiembre de 1933, en la municipalidad de Luquillo, dentro de este Distrito Judicial de Humacao;

"POR CUANTO, el expresado Alfonso Lastra Charriez en la sesión de esta Corte celebrada en el día de hoy mientras defendía a los

querellados por Desacato a este Tribunal, Señores Rosa Ramos, Antonio López Quiñones y Juan Lastra se hizo responsable de haber dado a la publicidad una carta firmada por el expresado Rosa Ramos. que fué publicada en la edición correspondiente al viernes, 14 del mes en curso, del periódico diario 'La Democracia' publicado en San Juan, que circuló ampliamente, en los días 14 y 15 del mes cursante, en el Distrito Judicial de Humacao cuya carta a que se refiere expresamente el caso citado en el párrafo anterior, literalmente transcrita dice así:

" 'San Juan, Puerto Rico, septiembre 12, 1934.—Hon. Procurador General, San Juan, P. R.—Señor: El 8 de septiembre de 1933, a las tres de la tarde, en la calle principal de Luquillo, Felipe García, *alias* Falo, en la inmediata presencia del policía insular Felícito García, placa 395, de Carmelo Estrella, de Angel Gutiérrez, de Agustín Matienzo, de Jacobo Matienzo, de Juan Placín y Mejía, de Zoilo López, de Eugenio Cátala, de Enrique Valedón y de otros, disparó cuatro tiros de revólver hiriendo gravemente en el pecho y en el vientre respectivamente a los señores Pablo Suárez y Rosa Ramos.

" 'El referido Felipe García, *alias* Falo, fué acusado en la Corte de Distrito de Humacao del delito de Atentado a la Vida en dos casos. Uno por herida que recibiera Pablo Suárez y otro por la herida en el vientre a Rosa Ramos.

" 'Posteriormente se vió el caso contra Felipe García *alias* Falo, en la Corte de Distrito de Humacao, por la agresión que infiriera a Pablo Suárez. En este caso llevó la defensa de Felipe García, *alias* Falo, el abogado Rafael Martínez Nadal. La prueba fué vigorosa, amplia y fundamentalmente acusadora. El Jurado debió sentir el manoseo de la influencia política y García, *alias* Falo, fué absuelto, quedando burlada la sociedad. Dentro del mismo recinto de la Corte de Distrito de Humacao, ajeno a las ajeno (sic) a las habitaciones que ocupa el señor Juez, se verificaron combinaciones sangrientas para la justicia.

" 'Transcurrió el tiempo, y el ahora suscribiente, trató de conseguir de ese Departamento la designación de un Fiscal especial que interviniera en el caso de El Pueblo contra Felipe García, *alias* Falo, por atentado a la vida al suscribiente Rosa Ramos. Se señaló el juicio, se citaron los testigos y unos días antes de la fecha señalada para el juicio oral el caso fué archivado el día 30 de agosto pasado o sea seis días antes de la fecha señalada. La prueba del Pueblo en éste como en el otro caso, era vigorosa, numerosa, seria y acusadora. No obstante, en esta vez la justicia no fué burlada por el Jurado, sino que fué rota en forma administrativa e inexplicable.

" 'El denunciante tiene escritas y bajo juramento las declaraciones de todos los testigos antes mencionados. El denunciante solicita una investigación del caso y al pedir justicia al Procurador de la Ley en Puerto Rico, quiere también conocer si esta la justicia burlada y encarnecida por los tribunales, puede cuando menos y a causa de la desesperación reinante y falta de garantías, ser aplicada por la mano decente de los ciudadanos honestos del país.—Respetuosamente, X Rosa Ramos.—Testigo del Signo: Antonio López Quiñones.

" 'Yo, Rosa Ramos, bajo juramento declaro: Que mi nombre es como queda dicho, que soy mayor de 21 años, vecino de Luquillo y de tránsito en San Juan; que los hechos vaciados en la denuncia que antecede, son ciertos y que éstos y la certeza de los mismos me constan en personal y propio conocimiento.—San Juan, Puerto Rico, septiembre 12, 1934.—Rosa Ramos, Declarante.

" 'Jurado y suscrito (sic) ante mí, por Rosa Ramos, mayor de edad y vecino de Luquillo, a quien conozco personalmente hoy día 12 de septiembre de 1934.—Juan Lastra, Notario Público.'

"Por cuanto, independientemente de cualquier delito de libelo. o perjurio que pueda existir con relación a las manifestaciones difamatorias e injuriosas contenidas en el texto de la transcrita carta, es lo cierto que la misma constituye una crítica injuriosa e infamatoria del procedimiento sustanciado ante esta Corte en el referido caso criminal tendiente a desacreditar, de manera injusta, a este Tribunal del Distrito Judicial de Humacao constituyendo el hecho un manifiesto desacato a esta Corte:

"Por Tanto, se ordena la comparecencia del Sr. Alfonso Lastra Charriez al salón de sesiones de este Tribunal el próximo día lunes, 24 del mes en curso a las nueve de la mañana, a fin de que exponga todos los motivos que tuviere, por los cuales entienda que no debe ser declarado culpable de Desacato a esta Corte, y correspondientemente castigado apercibiéndosele de que si no compareciere en dicho día y hora su incomparecencia será considerada por la Corte como Desacato al Tribunal.

"Humacao, Puerto Rico, á 19 de septiembre de 1934.—(Fdo.) R. Arjona Siaca, Juez del Distrito."

La alegación de falta de jurisdicción se basa en que tratándose de un desacato cometido fuera de la presencia del tribunal, ha debido iniciarse no a virtud de una orden del propio tribunal, si que presentándose ante él una declaración

o información jurada preliminar expresiva de los hechos constitutivos del mismo. Cita en su apoyo 4 Bancroft's Code Practice and Remedies, 3694, pár. 2871, 13 C. J. 64 y otras autoridades.

No hay duda alguna de que cuando el desacato se comete en la presencia de la corte, puede castigarse a su autor sumariamente, sin necesidad de *affidavit*, notificación, regla para mostrar causa u otro procedimiento. Cuando se comete fuera de la presencia de la corte, la situación varía. Resumiendo la jurisprudencia sobre el particular Corpus Juris, citado por el propio apelante, dice:

"Por regla general, los procedimientos para castigar por desacatos cometidos fuera de la presencia de la corte deben iniciarse por acusación o declaración jurada presentada a la corte exponiendo los hechos constitutivos del desacato; y la declaración jurada debe ser presentada a la corte o juez para su consideración y determinación judiciales; la mera presentación de la misma es insuficiente. La corte, sin embargo, puede actuar a instancia propia y formular la acusación." 13 C. J. 64.

Según resulta de los autos, aquí se ordenó la citación del apelante para mostrar causa, dándosele las garantías que se otorgan a los acusados en un procedimiento criminal. La única variación que se advierte en cuanto a la regla general expuesta, es que el procedimiento no comenzó mediante información sino por virtud de la orden fundada de la propia corte de distrito que conocemos.

El caso en sí mismo es peculiar. Cierto que el desacato, de haberse cometido, lo fué por medio de una carta publicada fuera de la presencia de la corte, pero es lo cierto también que fué actuando ante la corte que el acusado se hizo responsable de la publicación y que el periódico en que la carta se publicara debió estar en esos momentos al alcance de la corte ya que ésta juzgaba el caso de desacato seguido contra el autor de la misma y otras personas a quienes defendía el apelante.

Bajo esas circunstancias, conociendo como conocía los hechos por sí misma, creemos que la corte pudo actuar sin necesidad de declaración jurada previa alguna siempre, desde luego, que diera, como dió, al querellado amplia oportunidad para defenderse.

En el caso de *Del Toro* v. *La Corte Municipal,* 16 D.P.R. 93, 95, la corte, en opinión emitida por su Juez Asociado Sr. MacLeary, dijo.

"El desacato que se imputó a del Toro consistía en haber escrito y publicado en el periódico llamado El Combate cierto artículo en el que, en términos severos, se hacían apreciaciones con respecto al Juez Municipal de Cabo Rojo. . . .

"Se impugna la acusación que sirvió de base a los procedimientos por desacato, por no haber sido jurada por persona alguna, alegándose que el tribunal no podía conocer de ella sin el requisito del juramento. Tal requisito no es necesario en casos de desacato. Si el acto ofensivo viene a conocimiento de la corte en forma adecuada, puede establecerse una investigación, y después de las debidas diligencias, si hubiere prueba suficiente y se le hubiere dado una oportunidad al acusado para que se defendiera, puede propiamente castigársele por su conducta culpable, si ésta constituyere un desacato. La sección 146 de los Estatutos Revisados de Puerto Rio no requiere tal juramento; sí requiere que se 'notifique' al acusado y se le dé un término razonable para que se defienda contra el cargo que se le impute, lo que parece haberse hecho en este caso."

██ No está, pues, bien fundado el primer señalamiento de error. Tampoco el segundo por virtud del cual sostiene el apelante que los hechos expuestos en la carta publicada no constituyen desacato porque no se refieren a acción, pleito o procedimiento alguno pendiente ante la corte.

La ley vigente en esta Isla sobre la materia, en lo pertinente, prescribe:

"Sec. 1. La Corte Suprema, las cortes de distrito . . . tendrán facultad para castigar por desacato a toda persona culpable de cualquiera de los actos siguientes:

"1.     .     .     .     .     .     .     .

"2.     .     .     .     .     .     ;     .

"3. Crítica injuriosa o infamatoria de los decretos, órdenes o procedimientos de cualquier tribunal, publicada en algún impreso, periódico u hoja suelta, para su circulación, tendente a desacreditar injustamente al tribunal o a alguno de sus miembros.

"4.     .     .     .     .     .     .     .

"5. La voluntaria publicación de cualquier informe falso o groseramente inexacto, de procedimientos judiciales; *Disponiéndose, sin embargo,* que la publicación de cualquier informe verdadero y justo de algún procedimiento judicial, no será penable como desacato."

La ley no distingue entre procedimientos pendientes o terminados. La jurisprudencia sí. "Se ha resuelto generalmente", dice Corpus Juris, "que después de la resolución final del caso la prensa y el público tienen derecho a discutir, criticar y censurar libremente las decisiones de las cortes." 13 C. J. 37.

Algunas de las decisiones que sostienen el texto, resuelven:

" 'Cuando un caso está terminado, las cortes están sujetas a las mismas críticas que otras personas. Patterson v. Colorado, 205 U. S. 454, 463, 27 S. Ct. 556, 51 L. ed. 879, 10 Ann. Cas. 698.

" 'Cuando un caso se ha resuelto y se ha anunciado la decisión, la misma se convierte en propiedad pública . . . sujeta a escrutinio e investigación públicos. En tales casos es enteramente competente y legal para cualquier persona hacer comentarios sobre la decisión, y exponer sus errores o inconsistencias. . . . Y si aquéllos que así comentan, abandonan el asunto e imputan falta de honradez y motivos bajos al juez, podrán ser castigados mediante acusación por el delito de libelo—podrá también demandárseles por daños y perjuicios en una acción civil—o podrá hacérseles responsables de ambas maneras.' Duham v. State, 6 Iowa 245, 256.

" 'Tal crítica constituye un derecho ciudadano, esencial no solamente a la debida administración de justicia sino también a la tranquilidad y bienestar públicos. El privar de poder a las cortes para intervenir sumariamente con el ejercicio de tal derecho de la prensa y de la libertad de palabra, no les priva de ninguna facultad útil.' *Ex parte* McLeod, 120 Fed. 130, 136.

" 'Los comentarios, no importa lo fuerte que sean, que tengan relación con los procedimientos judiciales que ya han pasado y han tocado a su fin no constituyen desacato a la autoridad de la corte

aludida. Tales comentarios pueden constituir un libelo contra el juez o contra algún otro funcionario de la corte, mas no pueden considerarse como cometidos en desacato de su autoridad.' Cheadle v. State, 110 Ind. 301, 11 N. E. 426, 59 Am. R. 199. 'Los comentarios periodísticos, aunque sean libelosos, relacionados con los procedimientos de una corte enteramente pasados y terminados, no constituyen un desacato a la corte ni a la autoridad del tribunal a que se hace referencia.' Post v. State, 14 Oh. Cir. Ct. 111, 7 Oh. Cir. Dec. 257.

" 'No importa cuán difamatoria pueda ser para una corte o juez la publicación, la misma no podrá ser considerada como desacato a la corte a menos que se le escriba y publique con referencia a un caso que se halle entonces pendiente ante el tribunal.' *Ex parte* Green, 46 Tex. Cr. 576, 81 S. W. 723, 108 Am. S. R. 1035, 66 L.R.A. 727.

" 'Cuando un juez es candidato a la reelección, cualquier materia que arroje alguna sombra contra su imparcialidad y honradez en casos ya resueltos, no constituye desacato.' State v. Eau Claire County Cir. Ct., 97 Wis. 1, 72 N. W. 193, 65 Am. S. R. 90, 38 L.R.A. 554." 13 C. J. 37.

Pero también el texto expresa:

"Sin embargo, en el derecho común la regla era que la crítica a un funcionario judicial aunque se hiciera luego de terminada la causa, constituía desacato; y en algunas jurisdicciones aún prevalece la regla del derecho común, por lo menos cuando la crítica arroja alguna sombra contra la integridad de los jueces, o es difamatoria al tribunal." 13 C. J. 37, 38.

Se citan decisiones de Arkansas, Georgia, Michigan, Missouri, Vermont y Virginia, y se dice:

"La razón dada por aquellos tribunales que siguen la regla del derecho común, podrá hallarse en el caso de Burdett v. Com., 103 Va. 838, 846, 48 S. E. 878, 106 Am. S. R. 916, 68 L.R.A. 251. 'Sobre este aspecto de la materia, y con referencia a casos que tienen relación indirecta sobre la cuestión aquí envuelta, se trata de hacer una distinción para la cual no puedo hallar razón ni autoridad. Se dice que el poder de procesar puede ser ejercido en relación con los desacatos que se refieran a la conducta futura del juez mas no a su conducta pasada. En razón, veo sólo un pretexto para esta distinción. Las amenazas de insultar o lesionar a un juez en caso de que dicte determinada sentencia puede ser considerada como que obstaculiza su independencia de criterio y su imparcialidad en el

caso específico a que se refieren las amenazas. Y si el derecho a castigar ·termina ahí, puede surgir una consecuencia curiosa. Un hombre podría ser procesado por amenazar hacer una cosa por cuya realización no podría ser castigado. Uno dice de un juez: ''Si dicta sentencia en mi contra, le insulto o le pego.'' Por esto podrá procesársele. Pero si, habiéndose dictado ya la sentencia, se le insulta de hecho, ya no procede la acusación, porque el desacato se refiere a la conducta pasada del juez y a un caso que ya no está pendiente. El recurrirse a los principios originales, que es la única forma de determinar estas cuestiones, y demostrándose que el peso, la autoridad y la independencia de la corte pueden estar igualmente en peligro en una u otra forma, demostrará que esta distinción es meramente imaginaria.' '' 13 C. J. 37, 38.

En el caso de *State* v. *Hildreth,* 82 Vt. 382, 387, 18 Ann. Cas. 661, la opinión de la corte fué emitida por su Chief Justice Rowell. Es muy interesante. Analiza un buen número de casos ingleses, entre ellos el de Reg. v. Gray (1900) 2 Q. B. 36, en el que emitió la opinión el Lord Chief Justice Russell of Killowen, y expresa, en parte:

''Su señoría continúa diciendo: 'Ahora bien, conforme he dicho, nadie ha indicado que esto no constituya un desacato a la corte, y nadie ha sugerido ni podría sugerir que cae dentro del derecho que tiene el público a criticar en el sentido que he descrito. No constituye crítica; constituye un abuso personal e insolente hacia el juez como tal. Tenemos por tanto que considerarlo como un caso de desacato y tratar el mismo *brevi manu.* Ésta no es una jurisdicción nueva; es una jurisdicción tan antigua como el derecho común mismo, de que forma parte; sin embargo, es una jurisdicción para ser ejercida con escrupuloso cuidado; para ser ejercida solamente cuando el caso es claro y está fuera de toda duda razonable, porque si no se trata de un caso fuera de toda duda razonable las cortes dejarán y deberán dejar al Fiscal General que proceda mediante acusación penal.'' p. 663.

Y luego, refiriéndose a casos americanos, en parte, dice:

''La ley común sobre la materia ha sido también ampliamente considerada en este país. Entre los casos más antiguos está Com. v. Dandridge, 2 Va. Cas. 408, decidido en 1824. Éste fué un proceso por desacato por insultarse a un juez mientras entraba al edificio de la corte para ocupar su asiento en estrado. El insulto se

refería a lo que el juez había hecho durante el término anterior · en un caso visto entonces pero que aún estaba pendiente. El querellado alegó que si bien el poder para procesar podía ser ejercido en relación con desacatos referentes a la conducta futura de un juez, tal poder no podía ejercerse en relación con desacatos referentes a su conducta pasada. Pero la corte dijo que toda vez que la autoridad e independencia del tribunal podían igualmente haber sido atacadas en una u otra forma, la distinción era meramente imaginaria. Ese caso es citado con aprobación en el de Burdett v. Com., 103 Va. 838, 48 S. E. 878, 68 L.R.A. 251, 106 Am. St. Rep. 916, ·decidido en 1904.'' Id. 663, 664.

Para un estudio más amplio de la cuestión véase la nota que sigue el caso de *Percival* v. *State,* 45 Nebraska 741, reportado en 50 Am. St. Rep. 568. La nota comienza a la página 572.

La Legislatura de Puerto Rico al no hacer distinción alguna en la ley que decretara sobre la materia, colocó a esta isla en la línea de estados que sostienen que no es necesario que la crítica injuriosa o difamatoria lo sea únicamente de procedimientos pendientes para que constituya desacato y pueda castigarse como tal, y dicha ley debe cumplirse.

Claro es que para que el desacato exista el caso debe ser serio, e injuriosa o infamatoria en verdad la actuación del querellado. El derecho a la crítica fuerte, alerta, severa, apasionada aún, no puede ser restringido. Corresponde a los ciudadanos de un pueblo libre. Es suyo y nadie puede arrebatárselo. Sobre eso no hay duda alguna. Pero las cortes que constituyen el baluarte más firme de las libertades ciudadanas, para poder serlo de hecho deben conservar su dignidad y su prestigio. Por eso cuando son injuriadas o infamadas tienen no ya por ley si que inherente el poder de llamar ante sí y castigar sumariamente al culpable.

█ █ Argumentando los señalamientos tercero, cuarto y quinto sostiene el apelante que si se condenara al autor de la carta de que se trata, se violaría el artículo 2 del Acta Orgánica en cuanto a aquella de sus disposiciones que prohibe la aprobación de ley alguna que restrinja la libertad

de palabra o de la prensa, y que si ello es así en cuanto al autor, menos puede condenarse al acusado que actuó en el ejercicio legítimo de su cargo de abogado y dentro de las inmunidades que dicho ejercicio lleva consigo.

La facultad de castigar por desacato no milita en contra del derecho a la libre expresión del pensamiento por medio de la palabra o por escrito. Sí exige la responsabilidad consiguiente que lleva consigo lo que se diga o escriba. Y sobre el principio de responsabilidad tanto como sobre el de libertad es que descansan las verdaderas democracias.

Probada la certeza de la imputación, caería por su base la acusación formulada o el procedimiento seguido contra el querellado. Es más, si en un caso como el que estamos considerando hubieran ocurrido los hechos puestos de manifiesto por la carta, no debería castigarse si que premiarse al querellado por haberlos públicamente denunciado. Pero si la publicación se hizo sin base, entonces cabe exigir y debe exigirse a su autor la responsabilidad que su actuación llevó consigo.

Con respecto a la inmunidad del acusado como letrado hemos examinado de nuevo las citas que hace en su alegato que se encuentran estudiadas ampliamente en la opinión de esta corte emitida por su Juez Asociado Sr. MacLeary en el caso de *Coll* v. *Leake, Juez de Distrito,* 17 D.P.R. 857, y nuestra conclusión es que no sostienen la posición del apelante.

Aquí no se trata de crítica de declaraciones de testigos ni de manifestaciones o argumentos en pro de defendidos. Aquí el apelante asumió la responsabilidad de cierto acto atribuído a sus clientes, el de la publicación de la carta injuriosa o infamatoria, y esa responsabilidad así asumida fué la que se le exigió en el procedimiento de desacato.

A nuestro juicio no cometió la corte sentenciadora los errores tercero, cuarto y quinto que le atribuye el apelante, no obstante reconocer como reconocemos en toda su extensión el derecho que proclama el precepto constitucional invocado, a saber: "No se aprobará ninguna ley restringiendo

la libertad de la palabra o de la prensa, . . ." Artículo 2 del Acta Orgánica de 1917, y no obstante ratificar como ratificamos lo resuelto en el caso de *Coll* v. *Leake, Juez de Distrito,* supra, con respecto a los derechos de los abogados que se resume en el siguiente párrafo de la opinión:

"Según dice la 'Encyclopedia of Law and Practice,' el abogado puede criticar la conducta de las partes; puede impugnar, excusar, justificar, o condenar sus móviles, según los revela la evidencia; puede también atacar la credibilidad de los testigos cuando ésta se encuentra puesta en duda por prueba directa o por la inconsecuencia o incoherencia de sus declaraciones, su manera de declarar, su porte en el momento de declarar, o por otras circunstancias. Cuando semejante conclusión llega a ser una deducción lógica de las declaraciones que debidamente se han hecho ante la corte, puede él aún manifestar que se ha cometido perjurio, o que un testigo ha sido sobornado." 17 D.P.R. 857, 862.

■ Por los señalamientos sexto y séptimo se sostiene que la corte de distrito erró al no tomar en consideración la evidencia y al declarar convicto de desacato al apelante.

Expresamente consigna en su fallo la corte sentenciadora que lo basó en la evidencia practicada en el caso por desacato seguido contra Rosa Ramos y otros que fué la única que le sometió el propio acusado. Esa evidencia no ha sido elevada, no ha sido puesta por el apelante a nuestra disposición.

¿Cómo vamos a concluir que no fué tomada en consideración por la corte sentenciadora? Sólo cabe responder en la negativa la pregunta.

■ En cuanto a la manifestación hecha por el abogado del apelante al someter el caso, a saber: "que lo que dijera el querellado Alfonso Lastra Charriez fué dicho bajo el calor de la argumentación en el momento en que defendía a Rosa Ramos", no es suficiente por sí sola para eximir de responsabilidad al acusado. No conocemos la evidencia. Y debemos respetar la conclusión a que llegara la corte de distrito.

■ Por el último señalamiento se plantea la cuestión que quizá debió analizarse en primer término, esto es, la de si la carta publicada contiene una crítica injuriosa o difamatoria de algún decreto, orden o procedimiento de la Corte de Distrito de Humacao tendente a desacreditarla injustamente.

No teniendo ante nosotros la evidencia, debemos partir de la base de que la imputación quedó en pie sin explicación legítima alguna. La carta se refiere al decreto de la Corte de Distrito de Humacao ordenando el archivo de una causa seguida ante ella contra Félix García por atentado a la vida. Narra los hechos cometidos por el acusado y lo ocurrido en otro proceso en el que fué absuelto García a virtud de un veredicto del jurado, afirmando entre otras cosas que en el mismo recinto de la corte se verificaron combinaciones sangrientas para la justicia. Dice que transcurrió el tiempo y que la causa pendiente, no obstante la existencia de prueba plena sobre la culpabilidad de García, fué sobreseída, afirmando que en esta vez la justicia no fué burlada por el jurado, sino que fué rota en forma administrativa e inexplicable. Se pide al Procurador General una investigación a fin de que la justicia se administre por la mano decente de los ciudadanos del país.

Tanto las imputaciones concretas como el tono general del documento constituyen a nuestro juicio la clase de crítica injuriosa y calumniosa que tuvo en mente el legislador al redactar la ley de desacato. La publicación, si no eran ciertas las imputaciones hechas en la misma, no podía tener otro propósito que el de desacreditar injustamente al tribunal de distrito de Humacao. Porque en verdad un tribunal en el que tales hechos ocurran ¿qué crédito puede merecer a la comunidad?

Es cierto que no se hace ninguna imputación directa al carácter del juez de la corte en particular, dirigiéndose más bien la crítica al jurado y al fiscal, pero juez, jurado, fiscal y los otros funcionarios de la corte comprendiendo entre ellos

a los propios abogados que ante ella postulan, se encuentran de tal modo entrelazados que llegan a constituir la corte misma, resultando ésta, en un caso como el que estamos considerando, la finalmente injuriada o difamada, y como consecuencia lógica de la injuria o difamación, desacreditada injustamente ante el concepto público.

En cuanto a que no constando que el autor de la carta hubiera sido castigado por desacato, no es posible declarar culpable al apelante, creemos que basta enunciar la proposición para concluir que no tiene mérito. Ambos procedimientos se tramitaron con entera independencia. Se inició primero el seguido contra el firmante de la carta. Mientras se tramitaba, su abogado—el apelante—se hizo responsable de la publicación y contra él se dirigió entonces la acción de la justicia. Fué la publicación del documento la que hizo que las imputaciones trascendieran al público.

Otra proposición que tampoco tiene mérito es la de que habiéndose dirigido Rosa Ramos al Procurador General pidiéndole que abriera una investigación, hasta tanto no se practicara dicha investigación y se conociera el resultado de la misma no podría concluirse si se cometió o no desacato alguno.

El documento pide en efecto una investigación pero contiene imputaciones directas, y a virtud de su publicación salió de la esfera interna, oficial, dándose al público como algo definitivo y cierto. De no justificarse, como tenemos que asumir que no se justificó, constituye una crítica injuriosa que tiende a desacreditar injustamente a un tribunal que pudo ser juzgada por éste y castigada como desacato de acuerdo con la ley vigente sobre la materia y con sus poderes tradicionales inherentes.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.