# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BURDETT v. COMMONWEALTH.

### November 23, 1904.

1. CONTEMPT—*Adjournment of Court.*—In a prosecution for contempt in publishing an insulting libel concerning the judge of a court, the fact that the defendant thought that the court had adjourned at the time of the publication, or that the judge had in fact directed the sheriff to make the proclamation of adjournment, constitute no defense.

2. CONTEMPT—*C o n s t i t u t i o n a l Courts—Summary Punishment—Jury Trials.*—There is an inherent power of self-defense and self-preservation in the courts of this State created by the Constitution. This power may be regulated by the Legislature, but cannot be destroyed, or so far diminished as to be rendered ineffectual. It is a power necessarily resident in and to be exercised by the court itself, and the Legislature cannot deprive such courts of the power to summarily punish for contempt by providing for a jury trial in such case.

3. CONTEMPT—*Direct and Indirect—Difference in Procedure.*—The substantial difference between a direct and constructive contempt is one of procedure. Where the contempt is in the presence of the court, it may proceed on its own knowledge of the facts and punish the offender without further proof, and without issue or trial in any form, while in contempt not in the presence of the court (called indirect contempt), the offender must be brought before the court by a rule or other sufficient process; but the power of the court to punish is the same in both cases.

4. CONTEMPT—*Scandalizing Court or Judge—Endcd Cases.*—Courts have the power to punish, as for a contempt, libelous publications upon the proceedings of the court, or the judge thereof in his official capacity, and such power exists as well after a case has been finally disposed of as where it is still pending.

Opinion.

5. CONTEMPT—*Summary Punishment—Newspaper Articles—Liberty of the Press.*—The summary punishment, as for a contempt, of the author of a libelous newspaper article is not an invasion of the liberty of the press, but is to be exercised with the utmost caution and reserve. While any citizen may comment upon the decisions and proceedings of a court, and discuss their correctness, and the fitness or unfitness of the judges for their stations, and the fidelity with which they perform their duties, he has no right to attempt, by libellous publications, to degrade the tribunal, for such publications are an abuse of the liberty of the press, for which he is responsible.

Error to a judgment of the Circuit Court of Nelson county, affirming a judgment of the County Court of said county, imposing a fine upon the plaintiff in error for a contempt. The judgment of the County Court imposing a fine on the plaintiff in error was rendered November 6, 1903.

*Affirmed.*

The opinion states the case.

*S. B. Whitehead,* for the plaintiff in error.

*Attorney-General William A. Anderson,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

On the 30th of October, 1903, the County Court of Nelson county caused a rule to be issued against J. M. Burdett and M. J. Webb "to show cause, if any they can, why they shall not be finded and imprisoned for contempt of this court." On November 6 Burdett filed his demurrer and answer, and a motion to have the case heard and determined by a jury; but the court overruled his demurrer and motion, adjudged the defendant guilty of a contempt of court, and sentenced him to pay a fine of $50.00, and to be confined in jail for a period of ten days. To this judgment the defendant obtained a writ of

error from the Circuit Court, where it was affirmed, and to the judgment of the Circuit Court a writ of error was awarded by one of the judges of this court.

·It appears that Burdett was an apothecary in Nelson county, and that twelve indictments were found against him for selling at retail ardent spirits and malt liquors without a license. To these indictments he pleaded guilty, and a fine was entered up against him in one case of $40.00, and costs in the other cases, amounting in the aggregate to $75.51, which was paid to the sheriff of Nelson county on October 27, 1903.

On October 30, 1903, an article appeared in the *Nelson County Times* newspaper, signed by Burdett, in which he arraigns the conduct of the judge of the County Court in a most severe and offensive manner. He charges substantially that the grand jury which found the indictments acted under the dictation and constraint exercised over them by the judge; that under his influence twelve indictments were found, when the question of guilt or innocence could have been established by making one offense a test case; that he had wished to vindicate himself before the public, but had been forced to compromise the prosecutions against him, and to pay the fine and costs which had been imposed. He charges the judge with not only having acted towards him in a harsh and arbitrary manner, but that his conduct was actuated by vicious and corrupt motives.

. There can, therefore, be no doubt that the plaintiff in error was guilty of a gross and insulting libel, and it remains for us to consider whether, in the judgment rendered by the County Court, punishing the act as a contempt, there was any error of law, for which it should be reversed.

The contention of the plaintiff in error is that at the time of the publication the term of the County Court of Nelson county had ended; that if it had not ended, the court had

directed an adjournment, and had ordered the sheriff to make proclamation to that effect; and, thirdly, that the cases of the *Commonwealth* v. *J. M. Burdett* were ended, and the fines paid before the alleged contempt was committed.

With respect to the first contention, it is sufficient to say (conceding the circumstances to be material), that the term of the court had not ended, as the record proves, and with respect to the second, that it can hardly be considered a sufficient defense to the charge against him, that the plaintiff in error had made a mistake with respect to a fact which had no bearing upon his guilt or innocence of the offense charged, but only upon his immunity from punishment. It is a plea by way of confession and avoidance. "It may be true," says the plaintiff in error, "that I was guilty of a contempt of court when I committed the act, but I thought the court had adjourned, and that under the law I could not be punished. I find that I committed a blunder, and I ask to be permitted to go free on that account." Such a plea could scarcely be received with favor by a court of justice. The first two assignments of error are, therefore, overruled.

With respect to the third, we are of opinion that the cases of the *Commonwealth* v. *Burdett* had ended before the publication of the card. They had been tried, judgments had been rendered and satisfied, and, being criminal prosecutions, could not have been reopened at the instance of the Commonwealth.

The learned Attorney-General properly concedes that "there are a large number of cases and authorities outside of Virginia, upon which counsel for plaintiff in error can fairly rely in his advocacy of his contention," that courts are without authority to punish as a contempt of court a publication with respect to an ended cause. The law, as maintained by these cases, is thus stated in 7 Am. & Eng. Encyc. of Law (2 Ed.), 59: "A slanderous and libelous publication concerning the judge in relation

to an act already done, or a decision rendered, cannot be punished by the court as contempt. However criminal the publication may be, it lacks that necessary ingredient to constitute a contempt of tending to prejudice the cause, or to impede its progress." But this view omits all allusion to that kind of contempt which consists of scandalizing and defaming the court itself. To ascertain the law of this State in this respect we shall examine into the common law upon the subject.

We shall make no inquiry into the general power of courts to punish contempt summarily. That subject was fully considered in *Carter* v. *Commonwealth*, 96 Va. 791, 32 S. E. 780, 45 L. R. A. 310, and the conclusion was reached, that "there is an inherent power of self-defense and self-preservation in the courts of this State created by the Constitution. This power may be regulated by the Legislature, but cannot be destroyed or so far diminished as to be rendered ineffectual. It is a power necessarily resident in and to be exercised by the court itself, and the Legislature cannot deprive such courts of the power to summarily punish for contempts by providing for a jury trial in such case."

Coming then to the precise point in judgment, in *Roach* v. *Garvan*, 2 Atkyns, 471, known as the "St. James Evening Post Case," Lord Chancellor Hardwicke said: "There are three different sorts of contempt. One kind of contempt is scandalizing the court itself. There may be likewise a contempt of this court, in abusing parties who are concerned in causes here. There may be also a contempt of this court in prejudicing mankind against persons before the cause is heard. There cannot be anything of greater consequence than to keep the streams of justice clear and pure, that parties may proceed with safety both to themselves and their characters."

Blackstone's Commentaries, Vol. 4, p. 285, defines contempt to consist, among other things, in "speaking or writing con-

temptuously of the court or judges acting in their judicial capacity; by printing false accounts of causes depending in judgment, and by anything, in short, that demonstrated a gross want of that regard and respect, which, when once courts of justice are deprived of, their authority (so necessary for the good order of the kingdom) is entirely lost among the people."

In the 9 Cyc. of Law and Procedure, p. 6, a constructive contempt is stated to be "an act done not in the presence of the court, but at a distance, which tends to belittle, to degrade, or to obstruct, interrupt, prevent, or embarrass the administration of justice."

Barton, in Vol. 2 (2 Ed.), p. 774, of his Law Practice, is to the same effect. "Contempt of court is a disobedience to the court, or an opposing or despising the authority, justice or dignity thereof."

*Wyatt* v. *The People*, 17 Col. 253, 28 Pac. 961; *In re Dill*, 32 Kan. 669, 5 Pac. 39, 49 Am. Rep. 505; *Cartwright's Case*, 114 Mass. 230.

The subject has recently been investigated by the Supreme Court of Missouri in *State* v. *Shepherd*, 76 S. W. 79. That court had rendered a judgment in the suit of the *Oglesby* v. *Missouri Pac. R. R.*, 76 S. W. 623, and the opinion and judgment of the court had been attacked in a most acrimonious article in a newspaper. Upon a rule to show cause the whole subject of contempt, at common law and in this country, is examined, a multitude of decisions considered, and the conclusion reached that at common law one class of contempt consisted in scandalizing the court itself, and need not relate to a pending suit. It may be observed that in the judgment rendered by the Supreme Court of Missouri, which was the subject of animadversion, the judges were divided, four of them uniting in the judgment which was the subject of criticism, and three of them dissenting, while in the judgment upon the proceeding for contempt the court was unanimous.

In *Dandridge's Case*, 2 Va. Cas. 417, Judge White, in his opinion, says: "That to scandalize a court by speaking or writing, either in its presence or in its absence, is a high contempt, and how can a court be scandalized, except by scandalizing the judges, or some one of the judges, who sit in it? A court, apart from its judges, exists only in abstract idea, in contemplation of law, and viewed thus apart from them, it has not, it cannot have, any moral character to be scandalized. But let its judges be considered as corrupt cowards, when acting in their judicial capacity, and it is instantly covered with opprobrium and contempt." Judge Dade, delivering an opinion in the same case, says: "Shall a judge be called independent who is unavoidably placed in a situation in which he comes in conflict with the jealousies and resentments of those upon whose interests he has to act, and be reduced to the alternatives of either submitting tamely to contumely and insult, of resenting it by force, or resorting to the doubtful remedy of an action at law? In such a state of things, it would rest in the discretion of every party in court, to force the judge, either to shrink from his duty or to incur the degradation of his authority, which must unavoidably result from the adoption of either of the above alternatives. To suppose that the personal character of the judge would be a sufficient guarantee against this, is to imagine a state of society which would render the office of the judge wholly unnecessary."

In *State* v. *Morrill*, 16 Ark. 384, the court says: "By the common law, courts possess the power to punish, as for contempt, libelous publications upon their proceedings, pending or past, tending to degrade the tribunals, destroy that public confidence and respect for their judgments and decrees, so essential to the good order and well being of society, and to obstruct the free course of justice."

In *Pryor's Case*, 18 Kan. 72, 26 Am. Rep. 747, the court

finally decided the case, and the attorney for the losing party wrote a letter to the judge, saying the decision "is directly contrary to every principle of law governing injunctions, and everybody knows it, I believe. . . . . It is my desire that no such decisions or orders shall stand unreversed in any court I practice in." The court held that it was a criminal contempt, fined him $50, and suspended him from practice until the fine was paid, and the Supreme Court sustained the judgment.

In *Woolley's Case*, 11 Bush. 95, an attorney, on a motion for a rehearing, charged "that the court had overlooked the facts of the case; that it had assumed facts having no place in the proof, and ignored others which stood out on every page of the record; that it was careless and indifferent to the rights of a litigant, and that the result of this carelessness and indifference was a ruinous, disastrous, and unjust judgment against a party wholly innocent of all offense." The court pronounced the offense to be of a nature too grave to be silently overlooked. The defendant was cited for contempt, and disclaimed under oath any intention to commit a contempt, and in consideration of this condition his fine was assessed at the nominal sum of $30.

In *Chadwick's Case*, 67 N. W. 1071, the defendant, an attorney for the losing party in a case that had been decided by the Supreme Court of Michigan, wrote and published an article in the *Port Huron News*, criticising the decree, and in it charged the judge with unfairness and improper conduct. The Supreme Court held it to be a contempt of court, and that the power to punish for contempt existed as well after a case was finally disposed of as where it was still pending.

It may be well to observe that the substantial difference between a direct and a constructive contempt is one of procedure. Where the contempt is committed in the presence

of the court, it is competent for it to proceed upon its own knowledge of the facts, "and to punish the offender without further proof, and without issue or trial in any form." *Ex parte Terry*, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; *ex parte Wright*, 65 Ind. 508; *State* v. *Woodfin*, 5 Ired. L. 199, 42 Am. Dec. 161.

In dealing with indirect contempts—that is, such as are committed not in the presence of the court—the offender must be brought before the court by a rule or some other sufficient process; but the power of the court to punish is the same in both cases.

In the nature of things, why should not defamatory and scandalous criticisms upon a court or judge, with respect to an ended cause, be punished as a contempt? It is true that it can no longer injure the particular litigant, but it degrades the administration of justice by bringing the courts and judges into disrepute.

In *Commonwealth* v. *Dandridge*, already cited, the court said: "Upon this part of the subject, and in reference to cases which have an indirect bearing on the present question, a distinction is attempted for which I can find neither reason nor authority. It is said that the attaching power may be exercised for contempts touching the prospective conduct of the judge, but not so far as to touch his past conduct. In reason, I see but one pretense for this distinction. Threats and menaces of insult or injury to a judge in case he shall render a certain judgment may be considered as impairing his independence and impartiality in the particular case to which the threats refer. And, if the power of punishment stop here, a curious consequence may ensue. A man may be attached for threatening to do that for which he could not be attached when actually done. One says of a judge, 'If he render a certain judgment against me, I will insult or beat him.' For this he

may be attached. But if (the judgment having been rendered) this insult be actually offered, an attachment no longer lies, because the contempt is in relation to the past conduct of the judge, and to a case no longer pending. A recurrence to original principles—the only true test—by demonstrating that the weight, authority, and independence of the court may be equally assailed either way, will prove that this distinction is merely ideal."

We, therefore, conclude with the court in *Morrill's Case* that "by common law, courts possessed the power to punish, as for contempt, libelous publications, of the character of the one under consideration, upon their proceedings, pending or past, upon the ground that they tended to degrade the tribunals, destroy that public confidence and respect for their judgments and decrees so essentially necessary to the good order and well being of society, and most effectually obstructed the free course of justice."

Nor do we think that the summary punishment as for contempt, of a newspaper article, constitutes an invasion of the liberty of the press. With respect to this feature of the case, it can, of course, make no difference whether the article refers to a pending or a past transaction.

In *State* v. *Frew & Hart*, 24 W. Va. 417, 40 Am. Rep. 257, it is held that a publication in a newspaper with reference to a case pending and undetermined in the Supreme Court of Appeals, charging three of the four judges of the court with attending a political caucus more than a year before, and advising the action out of which the case arose, promising the caucus to hold its action legal and proper, and charging the court with agreeing to decide the case before an approaching political convention for political purposes, was a contempt of court, for which it might be summarily punished.

And in *State* v. *Morrill, supra*, it is said "that any citizen

has a right to comment upon the proceedings and decisions of a court, to. discuss their correctness, and the fitness or unfitness of the judges for their stations, and the fidelity with which they perform the important trusts reposed in them; but he has no right to attempt, by libelous publications, to degrade the tribunal, for such publications are an abuse of the liberty of the press, for which he is responsible." In this statement of the law, we heartily concur. *State* v. *Shepherd, supra.*

Such being the common law applicable to the case, the courts of Virginia are bound to administer it until it has been changed by competent authority.

There is a reasonable jealousy felt by the public with respect to the exercise of the summary power to punish for contempt. Especially is this true as to contempts which consist in "scandalizing the court." There is a natural apprehension that personal considerations may influence and bias the judgment of the court. It is, indeed, a delicate matter, and one with respect to which the courts should act with the utmost caution and reserve. That they have done so in this Commonwealth, its judicial history fully proves. But while the duty is a delicate one, it is one which cannot be shirked, and the faithful discharge of which is essential to the administration of justice. The courts are the courts of the people; the judges are the servants of the people; and it is their highest duty to the people to see that the streams of justice are kept pure and uncontaminated. If the charges brought in the article which constitutes the contempt in this case be true, then the judge of the County Court of Nelson deserves the scorn of all good men. In defaming him, the County Court and justice as therein administered were brought into utter disrepute.

Twelve indictments were found against the plaintiff in error for selling intoxicating liquors without a license. He claims in his card that he was innocent of the charge. He saw fit to

plead guilty. He had the same opportunity that is afforded to any citizen to appear before the tribunals of his country and to make his defense. Upon his trial, he could have appeared in person or by attorney. Everything pertinent to the case would have been given to the jury, and to the public. Instead of resorting to this means of vindicating his character, he has chosen to plead guilty to the indictments against him, and to resort for his vindication to a defamatory criticism of the court, which rests upon his unsupported statement.

Upon the whole case we are of opinion that the judgment of the Circuit Court should be affirmed.

*Affirmed.*