PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALFONSO LASTRA CHÁRRIEZ, Defendant and Appellant.

No. 5916.   Argued March 20, 1936.—Decided June 2, 1936.

*M. Benítez Flores* and *L. Tormes García* for appellant.   *R. A. Gómez* and *Luis Janer, Prosecuting Attorneys,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a contempt proceeding brought by order of the District Court of Humacao of September 19, 1934. The defendant was summoned and filed demurrers which his attorneys and the district attorney argued before the court on September 26, and which the court overruled in its decision of October 30 following. At the hearing, which was set for December 3, 1934, the People appeared through the district attorney, and the defendant through his attorney. The latter stated that he would submit the case on the evidence presented in the contempt proceeding brought against Rosa Ramos, and said "that what the defendant Alfonso Lastra Chárriez may have said was said in the heat of argument when he was defending Rosa Ramos." The district attorney also submitted the case and the court decided it on December 13 following, as follows:

"The case to which the title refers having been submitted on the same arguments and evidence presented in the action brought against Rosa Ramos and others, in a proceeding of the same nature as this, the Court, after examination of the said arguments and evidence, arrives at the conclusion that it must and does hold that Attorney Alfonso Lastra Chárriez is guilty of contempt of this Court, in accordance with the statute governing such cases; sentence will be pronounced on December 20, 1934, at nine o'clock in the morning. Let notice of this judgment be given to the parties."

In so far as it is pertinent the sentence pronounced says:

"Today, December 20, 1934, the defendant appears in his own right and, not having advanced any reason why sentence should not be pronounced against him, the Court sentences him to pay a fine of $30 or, in default thereof, to spend one day in jail for every dollar which he may fail to pay, without costs."

The defendant appealed to this Court and filed the statement of the case on October 15, 1935. This statement does not contain the evidence on which the judgment under review was based. The appellant's brief was filed on February 17, 1936, after he had been granted five extensions of time for the purpose. The prosecuting attorney filed his on March 16, 1936, and the hearing of the appeal was held four days later.

The appellant assigns eight errors which, in his opinion, were committed by the trial court, as follows: 1, in holding that it had jurisdiction; 2, in holding that the facts stated in its order constituted contempt; 3, in ignoring Section 2 of our Organic Act; 4 and 5, in disregarding the immunity of the defendant; 6, in not considering the evidence; 7, in finding him guilty of contempt; and 8, in holding that the writing of Rosa Ramos constitutes an injurious and defamatory criticism of the proceedings of the Court. He argues the first and second errors separately, the third, fourth, and fifth jointly, the sixth and seventh jointly, and the eighth separately.

■ The order of the court on which the proceeding was based says:

"Whereas, on September 5 of this year, on the express petition of the District Attorney of this Court, the Court dismissed the action brought by the People of Puerto Rico against Félix García, (a) Falo, for assault with intent to kill, committed, according to the information, on the person of Rosa Ramos in the month of September, 1933, in the municipality of Luquillo, within this Judcial District of Humacao;

"Whereas, the said Alfonso Lastra Chárriez, in the session of this Court held today, and while he was defending defendants Rosa Ra-

mos, Antonio López Quiñones and Juan Lastra, charged with contempt of this Court assumed the responsibility for the publication of a letter signed by the said Rosa Ramos, which was published in the edition of Friday, the 14th of the current month of the daily newspaper 'La Democracia', published in San Juan, which circulated freely in the Judicial District of Humacao on the 14th and 15th of the current month, and which letter specifically refers to the case cited in the foregoing paragraph and says literally:

" 'San Juan, Puerto Rico, September 12, 1934.—Hon. Attorney General, San Juan, P. R.—Sir: On September 8, 1933, at three o'clock in the afternoon, on the main street of Luquillo, Felipe García, alias Falo, in the immediate presence of insular policeman Felícito García, license 395, of Carmelo Estrella, of Angel Gutierrez, of Agustín Matienzo, of Jacobo Matienzo, of Juan Placín y Mejía, of Zoilo López, of Eugenio Cátala, of Enrique Valedón and of others, fired four revolver shots, seriously wounding Pablo Suárez and Rosa Ramos in the chest and abdomen respectively.

" 'The said Felipe García, alias Falo, was accused in the District Court of Humacao of the crime of assault with intent to kill in two cases. One for the wound inflicted on Pablo Suárez and another for the abdominal wound suffered by Rosa Ramos.

" 'Subsequently, the case against Felipe García, alias Falo, for assault on Pablo Suárez, was heard in the District Court of Humacao. In this case attorney Rafael Martínez Nadal was counsel for defendant Felipe García, alias, Falo. The evidence was strong, ample, and fundamentally accusatory. The jury must have felt the touch of political influence and García, alias Falo, was acquitted and society was mocked. Within the very Court House of the District Court of Humacao, outside of the outside (sic) of the chambers of the Hon. Judge agreements sanguinary to justice were reached.

" 'Time passed, and the undersigned attempted to obtain from that Department the appointment of a special prosecutor to try the case of The People against Felipe García, alias Falo, for assault with intent to kill the undersigned Rosa Ramos. The case was set for trial, the witnesses summoned, and some days before the date set for the trial the case was dismissed on August 30 last, that is, six days before the date set for the trial. The evidence of the People in this case, as in the other, was strong, ample, serious and accusatory. Nevertheless, this time justice was not mocked by the Jury, but was defeated in an administrative and inexplicable manner.

" 'The complainant has the written and sworn statements of all the witnesses above-mentioned. The complainant requests an investi-

gation of the case and, in praying the Attorney General of Puerto Rico for justice, he wishes to know also if this justice, mocked and derided by the courts, can at least, as a result of the prevailing desperation and lack of security, be applied by the decent hand of the honest citizens of the country.—Respectfully, Rosa Ramos.—Witness of the Mark: Antonio López Quiñones.

" 'I, Rosa Ramos, state under oath: That my name is as stated, that I am more than 21 years of age, a resident of Luquillo and in transit in San Juan; that the fact stated in the preceding complaint are true and that they are true to my own personal knowledge.—San Juan, Puerto Rico, September 12, 1934.—Rosa Ramos, Declarant.

" 'Sworn and subscribed to before me, by Rosa Ramos, of age and a resident of Luquillo, whom I know personally, this 12th day of September, 1934.—Juan Lastra, Notary Public.'

"Whereas, independently of any offense of libel or perjury which may exist in connection with the defamatory and injurious statements contained in the text of the letter transcribed, the truth is that the same constitutes an injurious and defamatory criticism of the proceeding held before this Court in the said criminal case, tending to discredit, in an unjust manner, this court of the Judicial District of Humacao, and constituting a manifest contempt of this Court:

"Now, therefore, Mr. Alfonso Lastra Chárriez is ordered to appear in the court room of this Court on Monday next, the 24th of the current month, at nine o'clock in the morning, for the purpose of stating the reasons he may have for believing that he should not be found guilty of Contempt of this Court, and punished accordingly, and is advised that if he should fail to appear on the said day and hour, such failure will be considered by this Court as Contempt of the Court.

"Humacao, Puerto Rico, September 19, 1934.—(Sgd.) R. Arjona Siaca, District Judge."

The allegation of lack of jurisdiction rests on the contention that, inasmuch as the contempt involved was committed out of the presence of the court, the proceeding should not have been instituted by an order of the court itself, but by a preliminary information or affidavit presented to the court setting forth the facts constituting the same. Appellant cites in this support 4 Bancroft's Code Practice and Remedies, 3694, par. 2871, 13 C.J. 64 and other authorities.

There is no doubt whatever that when the contempt is committed in the presence of the court, the guilty party may be summarily punished, without the necessity of an affidavit, notice, rule to show cause or other proceeding. When it is committed out of the presence of the court, the situation varies. Summarizing the cases on this point Corpus Juris, cited by the appellant himself, says:

"As a rule, proceedings to punish for contempts committed out of the presence of the court must be instituted by an accusation or affidavit presented to the court setting forth the facts constituting the contempt; and the affidavit must be laid before the court or judge for judicial consideration and action; the mere filing thereof is insufficient. The court, however, may act of its own motion and make the accusation." 13 C. J. 64.

As the record shows, in this case the appellant was summoned to show cause, and he was granted the same guaranties which are given to defendants in a criminal proceeding. The only variation from the general rule cited is that the proceeding was not instituted by an accusation but by an order of the district court itself, setting out the grounds for the charge, which we already know.

The case in itself is peculiar. It is true that the contempt, if it was committed, was committed by means of a letter published out of the presence of the court, but it is also true that it was before the court that the defendant assumed the responsibility for the publication and that the newspaper in which the letter was published must have been at the time within the reach of the court, since the latter was trying the contempt proceeding brought against the author of the writing and others for whom the appellant was acting as counsel.

Under those circumstances, and since it had personal knowledge of the facts, we are of the opinion that the court had the power to act without the necessity of an affidavit provided it gave, as it did give, the defendant ample opportunity to defend himself.

In the case of *Del Toro* v. *The Municipal Court*, 16 P.R.R. 89, the court, in an opinion delivered by Mr. Justice Mac-Leary, said:

"The contempt with which del Toro was charged was the writing and publishing in the newspaper called 'El Combate,' of a certain article reflecting on the municipal judge of Cabo Rojo in severe terms . . . .

"It is objected that the information on which the contempt proceedings were based, was not sworn to by any person whatever, and that the court could not take cognizance of it without such affidavit. This is not necessary in cases of contempt. If the offensive act comes to the knowledge of the court, in any proper manner, an inquiry can be instituted and, on sufficient evidence, after the investigation, and an opportunity afforded to the accused to be heard in his defense, he may be properly punished for his culpable conduct, if it amounts to a contempt. Section 146 of the Revised Statutes of Porto Rico does not require such an affidavit. It does require that the accused be 'notified and given a reasonable time to defend against the charge,' which seems to have been done in this case."

■■ The first assignment of error, then, is not well grounded. Nor is the second, in which the appellant maintains that the facts stated in the latter published do not constitute a contempt because they do not refer to any action, suit or proceeding pending before the court.

The law in force in this Island on this point, provides, in so far as it is pertinent, that:

"Sec. 1. The Supreme Court, the district courts, . . . shall have the power to punish for criminal contempt any person or persons guilty of any of the following acts:

"1.   *   *   *   *   *   *   *

"2.   *   *   *   *   *   *   *

"3. Scurrilous or libelous criticism of the orders, judgment, writs, or proceedings of any court, including the Industrial Commission of Puerto Rico, published in any public print or newspaper or circular for circulation, tending to bring the court or any of its members into undeserved disrepute;

"4.   *   *   *   *   *   *   *

"5. The wilful publication of any false or grossly inaccurate report of judicial or quasi-judicial proceedings; *Provided, however*, That the

publication of any true and fair report of any judicial proceeding shall not be punishable as a contempt.''

. The law does not distinguish between pending proceedings and those already closed. The decisions do. ''It is generally held'', says Corpus Juris, ''that after the final disposition of the case the press and the public have the right to freely discuss, criticize, and censure the decisions of the courts.'' 13 C.J. 37.

Some of the decisions which support the text decide:

'' 'When a case is finished, courts are subject to the same criticism as other people.' *Patterson* v. *Colorado*, 205 U. S. 454, 463, 27 S. Ct. 556, 51 L. ed. 879, 10 Ann. Cas. 689.

'' 'When a case is disposed of, and the decision announced, such decision becomes public property . . . subject to public scrutiny and investigation. In such cases, it is perfectly competent and lawful for anyone to comment upon the decision, and expose its errors and inconsistencies . . . And should those thus commenting, leave the subject, and impute dishonesty and base motives to the judge, they may be punished by indictment for a libel—they may be answerable in damages in a civil action—or they may be liable to both prosecutions.' *Duham* v. *State* 6 Iowa 245, 256.

'' 'Such criticism is the right of the citizen, and essential not only to the proper administration of justice, but to the public tranquillity and contentment. Withdrawing power from courts to summarily interfere with such exercise of the right of the press and freedom of speech deprives them of no useful power.' *Ex parte McLeod*, 120 Fed. 130, 136.

'' 'Comments, however stringent, which have relation to judicial proceedings which are past and ended are not contempt of the authority of the court to which reference is made. Such comments may constitute a libel against the judge or some other officer of the court, but cannot be treated as in contempt of its authority.' *Cheadle* v. *State*, 110 Ind. 301, 11 N. E. 426, 59 An. R. 199. 'Newspaper comments, although libelous, having relation to proceedings of a court which are wholly past and ended, are not in contempt of court nor of its authority.' *Post* v. *State* 14 Ohio Cir. Ct. 111, 7 Ohio Cir. D. 257.

'' 'No matter how defamatory of a court or judge a publication may be, it cannot be regarded as a contempt of court unless it is written and published with reference to a case then pending before

the court.' *Ex parte Green,* 46 Tex. Cr. 576, 81 S. W. 723, 108, Am. S. R. 1035, 66 L.R.A. 727.

" 'When a judge is a candidate for reelection matter reflecting on his impartiality and honesty on cases already disposed of is not contempt.' *State* v. *Eau Claire County Cir. Ct.,* 97 Wis. 1, 72 N. W. 193, 65 Am. S. Rep. 90, 38 L.R.A. 554." 13 C. J. 37."

But the text also states:

"It was the rule at common law, however, that criticism of a judicial officer even though made after the termination of the cause was contempt; and in some jurisdiction the common-law rule still prevails, at least where the criticism reflects on the integrity of the judges; or defames the court." 13 C. J. 37–38.

Decisions from Arkansas, Georgia, Michigan, Missouri, Vermont, and Virginia are cited, and it is said:

"The reason given by those courts which follow the common-law rule is found stated in *Burdett* v. *Com.* 103 Va. 838, 846, 48 S. E. 878, 106 Am. S. R. 916, 68 L. A. 251. 'Upon this part of the subject, and in reference to cases which have an indirect bearing on the present question, a distinction is attempted for which I can find neither reason nor authority. It is said that the attaching power may be exercised for contempts touching the prospective conduct of the judge, but not so far as to touch his past conduct. In reason, I see but one pretense for this distinction. Threats and menaces of insult or injury to a judge in case he shall render a certain judgment may be considered as impairing h's independence and impartiality in the particular case to which the threats refer. And, if the power to punish stop here, a curious consequence may ensue. A man may be attached for threatening to do that for which he could not be attached when actually done. One says of a judge. "If he renders a certain judgment against me, I will insult or beat him." For this he may be attached. But if (the judgment having been rendered) this insult be actually offered, and attachment no longer lies because the contempt is in relation to the past conduct of the judge, and to a case no longer pending. A recurrence to original principles—the only true test— by demonstrating that the weight, authority, and independence of the court may be equally assailed either way, will prove that this distinction is merely ideal.' " 13 C. J. 37, 38.

In the case of *State* v. *Hildreth,* 82 Vt. 382, 387, 18 Ann. Cas. 661, the opinion of the court was delivered by its Chief

Justice Rowell. It is very interesting. It analyzes a large number of English cases, among them that of *Reg.* v. *Gray* (1900) 2 Q.B. 36, in which the opinion was delivered by Lord Chief Justice Russell of Killowen, and states, in part:

"His lordship goes on still further to say: 'Now, as I have said, no one has suggested that this is not a contempt of court, and nobody has suggested, nor could suggest, that it falls within the right of public criticism in the sence I have described. It is not criticism. It is personal and scurrilous abuse of a judge as a judge. We have, therefore, to deal with it as a case of contempt, and we have to deal with it *brevi mami.* This is not a new-fangled jurisdiction. It is a jurisdiction as old as the common law, itself, of which it forms a part. It is a jurisdiction, however, to be exercised with scrupulous care, to be exercised only when the case is clear and beyond reasonable doubt, because, if it is not a case beyond reasonable doubt, the courts will, and ought to, leave the Attorney General to proceed by criminal information.' "

And later, referring to American cases it says, in part:

"The common law of this subject has also been pretty fully considered in this country. Among the earlier cases is *Commonwealth* v. *Dandridge,* 2 Va. Cas. 408, decided in 1824. That was an attachment for contempt in insulting a judge as he was entering the courhouse to take his seat upon the bench. The insult related to what the judge had done the term before in a case then tried and still pending. The respondent claimed that, while the attaching power might be exercised for contempts touching the prospective conduct of a judge, it could not be exercised for contempts touching his past conduct. But the court said that, as the authority and independence of the court might be equally assailed either way, the distinction was merely ideal. That case is referred to approvingly in Burdett's Case, 103 Va. 838, 48 S. E. 878, 68 L.R.A. 251, 106 Am. St. Rep. 916, decided in 1904."

For a more complete study of the question see the note which follows the case of *Percival* v. *State,* 45 Nebraska 741, reported in 50 Am. St. Rep. 568. The note begins on page 572.

The legislature of Puerto Rico, in making no distinction in the statute which it enacted on the matter, placed this

Island in the line of states which hold that it is not necessary for the injurious or defamatory criticism to be of pending proceedings only for it to constitute a contempt and to be punishable as such, and the said statute must be complied with.

Of course, for contempt to exist, the case must be serious and the action of the defendant truly injurious or defamatory. The right to strong, alert, severe, even impassioned criticism cannot be restricted. It belongs to the citizens of a free country. It is theirs and no one may wrest it from them. As to this there is no doubt. But the courts, which constitute the strongest bulwark of civil liberties, must, in order to be such in fact, preserve their dignity and prestige. For this reason when they are injured or defamed they have not only statutory but inherent power to summon the guilty party and to punish him summarily.

██ In arguing the third, fourth, and fifth assignments, the appellant contends that if the author of the letter in question were punished, Section 2 of the Organic Act would be violated in so far as it prohibits the approval of any act restricting freedom of speech or of the press, and if such is the case as to the author, then much less can the defendant, who acted in the legitimate exercise of his functions as an attorney, and within the immunities which are innate to the exercise of such functions, be convicted.

The power to punish contempt does not militate against the right to the free expression of thought by the spoken word or in writing. It does demand the responsibility which attaches to what is said or written. And true democracies rest on the principle of responsibility as well as on that of liberty.

If the truth of the imputation were proved, the accusation made or the proceeding instituted against the defendant would necessarily fall. What is more, if, in a case such as the one we are considering, the facts stated in the letter had occurred, the defendant should not have been punished, but

rather rewarded for having publicly denounced them. But if the publication was made without foundation, then it is proper to demand, and it should be demanded, that the author answer for his act.

In respect to the immunity of the defendant as an attorney, we have again examined the citations which he makes in his brief and which are amply studied in the opinion of this court rendered by Mr. Justice MacLeary in the case of *Coll* v. *Leake, District Judge,* 17 P.R.R. 823, and our conclusion is that they do not support the appellant's contentions.

Here the question is not one of criticism of the testimony of the witnesses or of statements or arguments in behalf of clients. Here the appellant assumed responsibility for a certain act attributed to his clients, that is, the publication of the injurious or defamatory letter, and this responsibility thus assumed was what was demanded of him in the contempt proceeding.

In our opinion the trial court did not commit the third, fourth, and fifth errors assigned by the appellant, although we recognize to its fullest extent the right proclaimed by the constitutional provision cited, to wit: "That no law shall be passed abridging the freedom of speech or of the press," Section 2 of the Organic Act of 1917, and although we ratify the decision in the case of *Coll* v. *Leake, District Judge, supra,* in respect to the rights of attorneys, as summarized in the following paragraph of the opinion:

"As stated in the Encyclopedia of Law and Practice, the advocate may arraign the conduct of the parties; he may impugn, excuse, justify, or condemn their motives so far as they are developed in the evidence; he may also assail the credibility of witnesses when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance upon the stand, or by other circumstances. When such a conclusion becomes a fair inference from the testimony properly before the court, he may even state that perjury has been committed or that a witness has been bribed." 17 P.R.R. 823, 828.

■ In the sixth and seventh assignments it is contended that the district court erred in not taking the evidence into consideration and in finding the appellant guilty of contempt.

The trial court clearly states in its decision that the same was based on the evidence presented in the contempt proceeding against Rosa Ramos and others, which was the only evidence submitted by the defendant himself. That evidence has not been sent up, has not been placed within our reach by the appellant.

How are we to conclude that it was not taken into consideration by the trial court? The question can only be answered in the negative.

■ As to the statement made by the attorney for the appellant upon submitting the case, to wit: "that what the defendant Alfonso Lastra Chárriez may have said was said in the heat of argument when he was defending Rosa Ramos", it is not sufficient in itself to exempt the defendant from responsibility. We do not know the evidence. And we must respect the conclusion of the district court.

■ The last assignment raises the question which perhaps should have been analyzed in the first place, that is, whether or not the letter published contains an injurious or defamatory criticism of any decree, order or proceeding of the District Court of Humacao tending to discredit it unjustly.

Since we do not have the evidence before us, we must start from the premise that the imputation stood without any legitimate explanation. The letter refers to the order of the District Court of Humacao dismissing a case brought before it against Félix García for assault with intent to kill. It relates the acts committed by the defendant and what happened in another prosecution wherein the jury acquitted García, and asserts, among other things, that agreements sanguinary to justice were made in the court-house itself. It says that time passed, and the pending case was dismissed, in

spite of the existence of ample evidence of the guilt of García, and affirms that this time justice was not mocked by the jury, but that it was defeated in an administrative and inexplicable manner. An investigation is asked of the Attorney General in order that justice may be administered by the decent hand of the citizens of the country.

The concrete imputations, as well as the general tone of the document, constitute, in our opinion, the sort of scurrilous and libelous criticism which the legislator had in mind when drafting the contempt act. The publication, if the imputations made in the same were not true, could have no other purpose but to unjustly discredit the District Court of Humacao. For, what respect indeed, can a court in which such things occur merit from the community?

It is true that no direct imputation is made against the character of the judge of the court himself, the criticism being directed rather to the jury and to the district attorney, but the judge, the jury, the district attorney, and the other officers of the court, and among them even the attorneys appearing before the court, are so closely related that they come to constitute the court itself, and it is the court, in a case such as the one we are considering, which is ultimately injured or defamed, and, as a logical consequence of the injury or defamation, unjustly discredited in the opinion of the public.

As to the contention that in the absence of a showing that the author of the letter was punished for contempt, it is not possible to find the appellant guilty, we are of the opinion that a statement of the proposition is sufficient to conclude that it is not meritorious. The prosecution of each of the two was completely independent of the other. The one against the signer of the letter was brought first. While it was pending, his attorney—the appellant—assumed responsibility for the publication, and then the arm of justice fell upon him. It was the publication of the document which brought the imputations to the attention of the public.

Another proposition which is not meritorious is that inasmuch as Rosa Ramos had addressed herself to the Attorney General asking him to institute an investigation, a conclusion as to whether or not a contempt had been committed could not be made until said investigation should be made and the result of the same known.

The document does, in effect, ask for an investigation but it contains direct imputations, and by virtue of its publication it left the internal and official sphere, and reached the public as something definite and certain. In the absence of justification, and we must assume there was none, it constitutes an injurious criticism which tends to discredit a court unjustly and which that court had the power to try and punish as contempt, in accordance with the law in force on the matter and with its traditional inherent powers.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of the case.