COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Lorish and Senior Judge Humphreys
Argued at Lexington, Virginia


AMY LYNN CHILDRESS

v.      Record No. 2207-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MARCH 24, 2026


FROM THE CIRCUIT COURT OF CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Amy Lynn Childress, *pro se*.

(Jason S. Miyares,[1] Attorney General; Ryan Beehler, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.


The circuit court held Amy Lynn Childress in direct contempt for "[m]isbehavior in the

presence of the court" under Code § 18.2-456(A)(1) and fined her $250. On appeal, Childress

challenges the contempt finding and argues that the court "violated [her] Sixth Amendment right

to counsel and protections under the [Americans with Disabilities Act]," 42 U.S.C. §§ 12101 to

12213 ("ADA"). Finding no error, we affirm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that

conflicts with the Commonwealth's evidence and regard as true all the credible evidence

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

favorable to the Commonwealth and all inferences that can be fairly drawn therefrom. *Cady*, 300 Va. at 329.

In 2023, Childress sought certification of a written statement of facts for an appeal from a charge that had been nolle prossed. The Commonwealth objected, and the court convened a hearing. The court "set the ground rules" for the hearing and instructed Childress not to interrupt the court. Childress immediately interrupted, stating, "I shouldn't be here without counsel[,] and it is improper for me to be here as a criminal defendant without counsel. I am not mentally well." Childress then accused the court of purposely denying her counsel and stated, "I already hear[d] your little rumors that you want to . . . hold me in contempt. That's what your goal is today."

The court warned Childress that she would "force the [c]ourt to start contempt proceedings" if she interrupted again. As the court explained the procedural posture of the case, Childress repeatedly interrupted. The court warned Childress that "[i]f you interrupt me again we will start contempt proceedings" and asked Childress if she understood. Childress answered, "Deal, yes, a hundred percent."

When the court explained that a statement of facts was not required because there was a transcript, Childress interjected, "[W]hat you're saying is not right." The court then held Childress in contempt for "continuously interrupting the [c]ourt after being notified and advised [not] to do so." It explained that Childress was "not entitled to counsel" for an adjudication of "summary contempt for contemptuous conduct in the presence of this [c]ourt" after she had been "told repeatedly not to interrupt." When asked if she understood why she was being held in contempt, Childress stated that she did not understand and that she was undergoing a "mental competency evaluation" because there had "been a question of [her] competency" in other

proceedings. When Childress kept interrupting, the court imposed a $250 fine "for [the] contemptuous conduct."

The court explained that Childress was not entitled to counsel for her motion to certify a statement of facts because she faced "no possibility of a jail sentence" for a "charge that had been nol[le] prossed." Further, the court declined to certify a statement of facts "because there [was] a transcript in the file." Childress said that she did not "feel comfortable" or "safe" and the court was "giving [her] a panic attack." Although the court released her, Childress remained in the courtroom and continued to interrupt. Ultimately, she was escorted from the courtroom.

ANALYSIS

I. The trial court's direct contempt finding is supported by the evidence.

"It has long been recognized and established that a court is invested with power to punish for contempt." *Scialdone v. Commonwealth*, 279 Va. 422, 442 (2010) (quoting *Higginbotham v. Commonwealth*, 206 Va. 291, 294 (1965)). "[W]e review the exercise of a court's contempt power under an abuse of discretion standard." *Orndoff v. Commonwealth*, ___ Va. ___, ___ (Sept. 25, 2025) (alteration in original) (quoting *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[W]hen evaluating whether the evidence supports a contempt finding, we have held that a court's judgment when exercising its contempt power is presumed correct and will not be overturned unless it is clearly erroneous or lacks evidentiary support." *Orndoff*, ___ Va. at ___; *see Nusbaum v. Berlin*, 273 Va. 385, 408 (2007).

- 3 -

"[T]here are two distinct types of contempt, direct and indirect." *Scialdone*, 279 Va. at 442. A "direct contempt is one committed in the presence of the court," while indirect contempt "occur[s] outside the presence of the court." *Gilman v. Commonwealth*, 275 Va. 222, 227 (2008). Direct contempt is "subject to summary adjudication" where "no evidence or further proof is required because the court has observed the offense." *Id.* at 227-28. The court is its "own best witness of what occurred." *Scialdone*, 279 Va. at 444 (quoting *United States v. Marshall*, 451 F.2d 372, 374 (9th Cir. 1971)). Thus, for direct contempt, the court may "proceed upon its own knowledge of the facts" and "punish the offender without further proof, and without issue or trial in any form." *Id.* at 442 (quoting *Burdett v. Commonwealth*, 103 Va. 838, 846 (1904)).

Conduct subject to summary adjudication and punishment as direct contempt includes "[m]isbehavior in the presence of the court." Code § 18.2-456(A)(1); *see Bell v. Commonwealth*, 81 Va. App. 616, 627 (2024). "We have never defined *misbehavior* in any definitive sense—nor could we." *Parham v. Commonwealth*, 60 Va. App. 450, 459 (2012); *see* Ronald J. Bacigal, *Criminal Offenses & Defenses* 457 (2025-26 ed.) (recognizing the term "cannot be fully defined"). "It is assumed that reasonable people understand the line between good and bad behavior, particularly when exhibited in open court in the presence of a judge." *Parham*, 60 Va. App. at 459.

Childress argues that the evidence was insufficient to support her direct contempt conviction. She contends that she was not disruptive or disrespectful to the court but made "respectful, trauma-informed requests grounded in her denial of counsel and accommodations."

The court repeatedly instructed Childress not to interrupt and advised that it would hold her in contempt if she persisted. Despite the court's clear warnings and Childress's assurances that she understood the consequences, she continued to interrupt the proceedings. When the

court tried to address Childress's concerns, Childress interjected with the accusation that the court's goal was to hold her in contempt. These interruptions reflected "defiance of, and disdain for, the judiciary, while accomplishing absolutely nothing toward addressing [any] alleged error that provoked [her] to misbehave in the first place." *Parham*, 60 Va. App. at 459. And although "misbehavior in the presence of the court may be summarily punished under Code § 18.2-456(A)(1) without a showing of an obstruction or interruption of justice," *id.* at 461, we note that each time Childress interrupted, she disrupted the court's ability to conduct the hearing on her request to certify a statement of facts.

Childress claims her behavior was justified because she was merely requesting counsel. As the court explained, however, Childress was not entitled to counsel for a hearing on her request to certify a statement of facts because (a) the charge had been nolle prossed, so she faced no possibility of jail time; and (b) a transcript already existed, so no statement of facts was necessary. Although "[n]o litigant is expected to cheerfully agree with an adverse judicial ruling," the court was right to insist that Childress heed warnings to maintain decorum and "refrain from exhibiting contemptuous behavior in open court." *Id.* at 459. Based on the record before us, we conclude that the evidence was sufficient to support the finding of direct contempt.

II. Childress's remaining challenges do not entitle her to relief.

Childress claims that "[t]he trial court violated [her] Sixth Amendment right to counsel and protections under the ADA" because she appeared without an attorney and the court did not make reasonable accommodations for her post traumatic stress disorder and anxiety.[2] But

---

[2] In support of her claims, Childress cites to documents not in the record and asks this Court to supplement the record. We deny this motion. An appellate court is "limited to the record of the proceedings which have taken place in the lower court and have been there settled and certified to us." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 39 n.3 (2007) (quoting *Ward v. Charlton*, 177 Va. 101, 107 (1941)).

Childress was not entitled to counsel for either the summary contempt adjudication or the underlying request to certify a statement of facts, and she did not invoke the ADA at the hearing.

A. Sixth Amendment

The Sixth Amendment did not provide Childress a right to counsel for the summary contempt adjudication. "[W]hile contempt may be an offense against the law and subject to appropriate punishment, . . . since the foundation of our government[,] proceedings to punish such offenses have been regarded as sui generis and not 'criminal prosecutions' within the Sixth Amendment or common understanding." *Porter v. Commonwealth*, 65 Va. App. 467, 477 (2015) (quoting *Myers v. United States*, 264 U.S. 95, 104-05 (1924)); *see also Virk v. Clemens*, 81 Va. App. 632, 661 (2024) (stating that a "summary contempt proceeding is not inherently criminal in nature"). "Because criminal contempt proceedings are not 'criminal prosecutions,' the protections of the Sixth Amendment do not apply to such proceedings." *Gilman*, 275 Va. at 228. Thus, the court did not violate Childress's Sixth Amendment right to counsel because that right did not apply.

Additionally, Childress had no Sixth Amendment right to counsel for her underlying request to certify a statement of facts. She was attempting to appeal a charge that had been nolle prossed. The Commonwealth objected to her statement of facts, and the court convened a hearing as required by Rule 5A:8. *See* Rule 5A:8(d) (stating that a judge "must set a hearing with notice to all parties" within 10 days after an "objection is filed" to a written statement of facts). At the hearing, the court denied Childress's certification request because a transcript already existed for the proceeding in question. *See* Rule 5A:8(c) (addressing requests for a statement of facts "*in [l]ieu of [t]ranscript*" (emphasis added)). We agree that Childress was not entitled to a statement of facts under Rule 5A:8. And, more to the point, we agree that Childress was not entitled to counsel under the Sixth Amendment because she did not face the possibility

of jail time for the nolle-prossed charge. *See Harris v. Commonwealth*, 26 Va. App. 794, 802 (1998) (stating that the right to counsel under the Sixth Amendment applies only to prosecutions for which the defendant faces actual incarceration); *see also Scott v. Illinois*, 440 U.S. 367, 373-74 (1979). For these reasons, we conclude that the court did not violate Childress's right to counsel under the Sixth Amendment.

B. ADA accommodations

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of the contemporaneous objection rule is to alert opposing counsel to the issue and to provide the trial court an opportunity to intelligently rule on the issue," *Commonwealth v. Carolino*, 303 Va. 399, 409 (2024), thus "avoiding unnecessary appeals and reversals," *Brown v. Commonwealth*, 279 Va. 210, 217 (2010).

The record on appeal does not show that Childress invoked the ADA or asked the court to make a reasonable accommodation under the ADA. Although Childress said that she was "not comfortable" and "not safe," she did not cite a disability as the cause. Childress never spoke of the ADA during the hearing and offered no evidence that she had a disability recognized under the ADA. When informed of her discomfort, the court gave her permission to leave. Rather than accepting the court's permission to exit, however, Childress remained and continued to interrupt. Simply put, Childress made no ADA-specific request for accommodations. Thus, the court could not know what "particular point [was] being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Although Childress invokes the "ends of justice" exception to Rule 5A:18, she fails to affirmatively argue that the "exception is necessary to avoid a grave injustice or the denial of essential rights." *Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 503 (2009)). The "'ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). To avail oneself of the exception, "[the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (alteration in original) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). It is never enough for an appellant "to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

An appellant has a "heavy" burden to demonstrate that a miscarriage of justice has occurred. *Holt*, 66 Va. App. at 210 (quoting *Brittle*, 54 Va. App. at 514). Childress has not carried her burden. She has failed to "point . . . to a particular place in the record" affirmatively establishing a manifest injustice or denial of essential rights. *Brittle*, 54 Va. App. at 517. We find that her argument is waived, so we do not consider it. Rule 5A:18.

CONCLUSION

The circuit court did not abuse its discretion by summarily holding Childress in direct contempt under Code § 18.2-456(A)(1), and it did not violate her Sixth Amendment rights. Childress failed to preserve for appeal any issue concerning the ADA. Therefore, we affirm the circuit court's judgment.

*Affirmed.*